**William WILSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–9503–CR–97.**

Court of Appeals of Indiana.

Aug. 8, 1996.

Richard D. Gilroy, Indianapolis, for Appellant-Defendant.

Pamela Carter, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee-Plaintiff.

## OPINION

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, William Wilson ("Wilson"), appeals from his convictions for Possession of Cocaine, a class C felony, and Resisting Law Enforcement, a class A misdemeanor. We affirm.

### Issues

Wilson presents two issues for our review, which we restate as:

I. Whether the police had reasonable suspicion to stop and search Wilson; and,

II. Whether there was sufficient evidence to support Wilson's convictions.

### Facts and Procedural History

The facts most favorable to the verdicts indicate that at approximately 1:00 a.m. several Indianapolis Police Department ("IPD") uniformed police officers in marked police vehicles were conducting a "sweep" [1]

---

1. In a "sweep" operation, the IPD targets a neighborhood with an identified crime problem and then conspicuously enters the area with uniformed police officers. The objective of such an operation is to deter and to detect the targeted activity. Prior to conducting the "sweep" that led to Wilson's arrest, the IPD had targeted the

of a high crime neighborhood known for significant drug activity. Wilson was standing in the yard of a vacant house with another man, who was later identified as Brian Martin ("Martin"). Police had received prior reports of criminal activity in relation to that vacant house. In view of Officer Tom Shaffer, Wilson and Martin extended their hands together and appeared to have exchanged something. Officer Shaffer testified that he could see that an object was exchanged but that he could not specifically see what the object was. Officer Shaffer and the other officer riding with him pulled the squad car over and shined the spotlight on Wilson and Martin, who then turned and walked toward the vacant house and appeared to be hiding between two houses. The officers exited the vehicle and commanded the men to stop by shouting, "Stop! Police!" Wilson and Martin ran from the officers. Officer Shaffer shouted "Stop! Police!" at least once more. Other officers who had arrived at the scene also ordered the men to stop. Wilson continued to run. Officer Shaffer put his flashlight beam on Wilson and saw him place a balled up piece of brown paper in his mouth.

Officer Shaffer apprehended Wilson, directed him to the porch of the house, conducted a pat-down search for weapons, and placed him in handcuffs. When Wilson was being handcuffed, he spit the brown paper onto the ground. Officer Shaffer retrieved the brown paper. He testified that the brown paper was partially wet. Inside the brown paper were seventeen small plastic baggies which were later identified as rock cocaine. Next to the brown bag on the ground was a bag which contained what was later identified as marijuana.

Wilson was charged with Possession of Cocaine, Possession of Marijuana, and Resisting Law Enforcement. He moved to suppress the evidence on the basis that Officer Shaffer did not have reasonable suspicion to stop him and search him. His motion to suppress the evidence was overruled and he was convicted of Possession of Cocaine and Resisting Law Enforcement. He was also adjudicated to be an habitual offender. Wilson was sentenced to four years for the

subject area as one that is known for drug traf-

Possession of Cocaine conviction and to one year for Resisting Law Enforcement. Those sentences were ordered to run concurrently. His sentence was enhanced by eight years as a result of his being an habitual offender, which term was to run consecutive to the other sentences.

*Discussion and Decision*

I

We must first determine whether the police had reasonable suspicion to stop and search Wilson. Because a trial court's decision to deny a motion to suppress evidence is reviewed as a matter of sufficiency, *Berry v. State*, 574 N.E.2d 960 (Ind.Ct.App.1991), *reh. denied, trans. denied*, we will neither reweigh the evidence nor judge the credibility of witnesses. *Johnson v. State*, 450 N.E.2d 123, 124 (Ind.Ct.App.1983). Indiana has adopted the *Terry* rationale in determining the legality of investigatory stops under Article I, Sec. 11 of the Indiana Constitution. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Taylor v. State*, 639 N.E.2d 1052, 1054 (Ind.Ct.App.1994).

In *Terry*, the United States Supreme Court established the rule that the police, without a warrant or probable cause, can briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion of criminal activity, even if they lack probable cause under the Fourth Amendment. In addition to the detainment, the officer can conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes the individual is armed and dangerous. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause. *U.S. v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). In evaluating the validity of a stop, we must consider "the totality of the circumstances—the whole picture." *Id.* (citing *United States v. Cortez*,

ficking and high crime.

449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

■ Judicial interpretation of what constitutes "reasonable suspicion" is fact-sensitive. Another panel of this court recently held in *Tumblin v. State,* 664 N.E.2d 783 (Ind.Ct. App.1996), that an officer's observation that two males were walking on a sidewalk in a high crime area of the city, saw the approaching squad car, and turned to walk in the opposite direction did not, collectively or individually, create a reasonable suspicion of criminal activity justifying an investigatory stop. However, our supreme court held in *Hailey v. State,* 521 N.E.2d 1318 (Ind.1988), that a police officer was justified in making an initial investigatory stop of a defendant where the police officer observed the defendant walking down the street in a business district at 1:30 a.m. and noticed that he was acting suspiciously. When the defendant noticed that the officer was watching him, he changed his direction and his speed.

Additionally, the Seventh Circuit Court of Appeals held recently in *U.S. v. Quinn,* 83 F.3d 917, 921 (7th Cir.1996), that there was reasonable suspicion to stop a person who, "when the police drew nearer still, the members of that group continued to behave suspiciously by scattering and then attempting to head off in opposite directions." Like officer Shaffer, the officer in *Quinn* was involved in a street sweep of a neighborhood known for high drug activity. Three men were standing on a corner. As the police car approached, one of the men threw a plastic baggie on the ground and all began to walk away in different directions. The men did not change the speed of their walk, and they submitted to the officer's command to halt.

■ Flight from properly identified law enforcement officers is sufficient to justify an investigatory stop. *Platt v. State,* 589 N.E.2d 222, 226 (Ind.1992).[2] The Seventh Circuit Court of Appeals stated that "whether or not suspects have a right to refuse to respond to an investigative stop, a suspect's actual *flight* from an officer may certainly provide information to ripen an officer's preexisting suspicions into probable cause." *Tom v. Voida,* 963 F.2d at 960. Justice Brennan conceded that "other reactions, such as flight, may often provide the necessary information, in addition to that which the officers already possess, to constitute probable cause." *Kolender v. Lawson,* 461 U.S. 352, 366, n. 4, 103 S.Ct. 1855, 1863, n. 4, 75 L.Ed.2d 903 (1983).[3]

■ It appears then, that whether a defendant flees from police may determine whether there was reasonable suspicion for a stop. This is so because seizure of the individual does not occur until "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry,* 392 U.S. at 20, n. 16, 88 S.Ct. at 1879, n. 16. The United States Supreme Court has subsequently interpreted that requirement in *Terry* to mean that seizure does not occur when the suspect fails to yield. *California v. Hodari D.,* 499 U.S. at 624–26, 111 S.Ct. at 1550. "It [seizure] does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of

---

2. The Seventh Circuit Court of Appeals, interpreting § 1983, stated that "although the Supreme Court has not decided whether flight alone may support a finding of reasonable suspicion, flight is certainly a relevant and probative factor." *Tom v. Voida,* 963 F.2d 952, 958 (7th Cir.1992). The United States Supreme Court reserved the question in *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), of whether the police may question someone who does nothing more than "scatter in panic upon the mere sighting of the police." However, in *Michigan v. Chesternut,* 486 U.S. 567, 576–77, 108 S.Ct. 1975, 1981, 100 L.Ed.2d 565 (1988), Justices Kennedy and Scalia, in their concurrence, stated that "respondent's unprovoked flight gave the police ample cause to stop him."

3. Justice Brennan recognized a suspect's right to remain silent. "States may not authorize the arrest and criminal prosecution of an individual for failing to produce identification or further information on demand by a police officer" when the officer has only a reasonable suspicion of criminal activity. To the contrary, police officers with only a reasonable suspicion "must allow the person to leave after a reasonably brief period of time unless the information they have acquired during the encounter has given them probable cause sufficient to justify an arrest." *Kolender v. Lawson* 461 U.S. 352, 362–67, 103 S.Ct. 1855, 1861–63, 75 L.Ed.2d 903.

the law!' at a fleeing form that continues to flee." *Id.* Thus, there can be no violation of the Fourth Amendment until a physical seizure of the person has been accomplished. *See also U.S. v. $32,400.00 in U.S. Currency,* 82 F.3d 135 (7th Cir.1996).

■ Ironically, then, had Wilson remained and not fled, his argument against a reasonable suspicion may have been enhanced. However, in view of the totality of the circumstances, Wilson's flight, together with the other facts, presented police with a reasonable suspicion of criminal activity. Our supreme court more recently stated that, "[r]easonable suspicion is more easily attained at 2:15 a.m. in a high crime area." *Johnson v. State,* 659 N.E.2d 116 (Ind.1995). The Seventh Circuit Court of Appeals has held that, standing alone, a defendant's presence in a high crime area is an insufficient ground upon which to conduct a search. However, courts may consider a defendant's presence in a high crime area as part of the totality of circumstances confronting the officer at the time of the stop. *U.S. v. Evans,* 994 F.2d 317 (7th Cir.1993), *cert. denied,* 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993).

■ At the time of Wilson's arrest, officer Shaffer had patrolled that area for over seven years. He was familiar with the area and the nature of crime and drug activity. Additionally, Officer Shaffer was well-versed in the factors pointing to a drug transaction: he had made hundreds of narcotics arrests and had received special training in the recognition of narcotics activity. Wilson and Martin were seen in front of a vacant house exchanging an object. The area was known for high drug activity. When they noticed the police car, they walked away, and appeared to be hiding between two houses. When ordered to stop by police, Wilson and Martin ran in two different directions. The totality of these facts supports the claim by the officers that they had a reasonable suspicion to believe criminal activity was afoot.

■ The distinction made by this court in *Tumblin,* 664 N.E.2d 783, presents a difficulty in applying the reasonable suspicion requirement in a consistent manner. That the suspects in *Tumblin* changed directions upon sight of the police, but did not increase their speed, is a subtle distinction subject to differing interpretation. Applying the rationale of *Tumblin,* whether there is reasonable suspicion turns on how fast, or slow, a defendant is walking. The pace of one's walk, real or perceived, is subject to various interpretations. A consideration of the totality of the circumstances, which could include but is not limited to an officer's knowledge, experience and training, whether the conduct is observed in an area known for high crime, other actions of the persons involved, and whether it appears from the officer's perspective that the suspect is attempting to avoid the police after visual contact has been made, should be considered in determining whether the police had reasonable suspicion to believe there is criminal activity afoot.

Not every investigatory stop will support an officer's suspicion. The United States Supreme Court recognized in *U.S. v. Sokolow,* 490 U.S. at 8–11, 109 S.Ct. at 1586–87:

[T]here could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot. Indeed, *Terry* itself involved a series of acts, each of them perhaps innocent if viewed separately, but which taken together warranted further investigation ... Innocent behavior will frequently provide the basis for a showing of probable cause, and ... in making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty', but the degree of suspicion that attaches to particular types of noncriminal acts. That principle applies equally well to the reasonable suspicion inquiry. (citations omitted)

Applying this theory, Officer Shaffer clearly had a reasonable suspicion to believe that Wilson was committing a crime.

## II

■ We next examine whether there was sufficient evidence to support Wilson's convictions. Our standard of review for claims of sufficiency of the evidence is well-settled. We do not reweigh the evidence or judge the credibility of witnesses. Wilson claims there

is insufficient evidence to support the fact that he spit the brown bag full of drugs out of his mouth. The jury weighed his testimony against the testimony of Officer Shaffer and the other officers at the scene. The jury chose to accept Officer Shaffer's version of the facts. We will not invade the purview of the jury and reweigh that testimony.

Affirmed.

BARTEAU and ROBERTSON, JJ., concur.