STATE of Indiana, Appellant–
Defendant,

v.

Rodney BELCHER, Appellee–Plaintiff.

No. 02A03–9906–CR–212.

Court of Appeals of Indiana.

Feb. 23, 2000.

Rehearing Denied April 18, 2000.

Jeffrey A. Modisett, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Attorneys for Appellant.

P. Stephen Miller, Fort Wayne, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

The State of Indiana charged Rodney Belcher with one count of carrying a handgun without a license, a class C felony, and

one count of resisting law enforcement, a class A misdemeanor. Prior to trial, the trial court granted Belcher's motion to suppress evidence relative to a handgun Belcher dropped at the time of his arrest. The State presents as the sole issue for review the correctness of that ruling.

We reverse.

The undisputed facts are that the southwest quadrant of the City of Fort Wayne is a high crime area. At approximately 3 a.m. on August 8, 1998, the Fort Wayne Police Department (FWPD) and the Allen County Police Department (ACPD) were conducting a saturation patrol of that quadrant. FWPD Officer Scott Adam and ACPD Officer Stan Pflueger were patrolling the area in a marked squad car and Officers Gary Isley and Todd Battershell were patrolling the area in a different car. There was a public pay telephone located on a street corner at that location. Officer Battershell, a three-year FWPD veteran, chose that particular location because drug dealers, prostitutes, and pimps in the area were known to use that telephone.

At approximately the same time, the officers in the two cars spotted Belcher walking down the street. Although it was hot and humid, Belcher was walking with his hands inside the pockets of the nylon jacket that he was wearing. When Belcher saw the police cruisers, he changed direction and did not make eye contact with the officers as he continued to walk away. As Officers Battershell and Isley observed from a distance, Officer Adam activated his flashing lights and pulled over beside Belcher on the opposite side of the road.

Officer Adam rolled down his window and asked Belcher, "How are you doing? Can you step over here?" *Record* at 33. Belcher, who did not remove his hands from his pockets, responded, "I didn't do anything." *Id.* Officer Adam opened his door and Belcher took off running. Officer Adam ordered Belcher to stop, but Belcher did not comply. Officer Adam saw two objects fall from Belcher's pockets

as he ran. Officers Battershell and Isley joined in the pursuit. Officers Adam and Isley apprehended Belcher after a brief chase. Officer Battershell returned to the spot where he saw the items drop from Belcher's pocket. He found a handgun and an accompanying ammunition magazine lying on the ground. Belcher was subsequently charged with carrying a handgun without a license and resisting law enforcement. He submitted a motion to suppress the handgun and the magazine, contending that they were the fruits of an illegal arrest. The trial court agreed with Belcher and granted the motion to suppress.

■ We review a trial court's decision to grant a motion to suppress as a matter of sufficiency. *Wilson v. State*, 670 N.E.2d 27 (Ind.Ct.App.1996). When conducting such a review, we neither reweigh evidence nor judge witness credibility. *Id.* The trial court in this instance granted the motion to suppress on the basis that the observations made by Officers Adam, Battershell, Isley, and Pflueger "were insufficient to justify an investigatory stop of Belcher." *Record* at 18. The trial court's conclusion was erroneous.

In *Wilson v. State*, 670 N.E.2d 27, this court was confronted with a factual scenario similar in some important respects to the instant case. In *Wilson*, the defendant was standing in a vacant lot located in a high crime area at 1:00 a.m. Police officers observed as the defendant and another person exchanged an object. The officers pulled their squad car over and shined their spotlight on the defendant and the other man. The two men turned and walked between two nearby houses, where it appeared they attempted to hide. The police officers got out of their car, advanced on the men, and shouted, "Stop! Police!" *Id.* at 29. The defendant and the other man fled and the police pursued, once again ordering the two fleeing suspects to halt. During the chase, one of the police officers saw the defendant put a

balled up piece of brown paper in his mouth. Police eventually caught up with the defendant. While the officer conducted a pat down search, the defendant spit out the object he had placed into his mouth.

The trial court denied the defendant's motion to suppress and the defendant appealed. This court's analysis centered upon the question of whether the police in that case had conducted a valid *Terry* stop. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court ruled that, without probable cause or a warrant, the police can briefly detain a person for investigatory purposes if the officer has a reasonable suspicion of criminal activity. The Court determined that such a stop need not be based upon probable cause necessary to effect an arrest under the Fourth Amendment, but must be based upon specific and articulable facts that give rise to a reasonable suspicion of criminal activity. Indiana has adopted the *Terry* rationale for the purpose of determining the legality of an investigatory stop under Article 1, Section 11 of the Indiana Constitution. *Wilson v. State,* 670 N.E.2d 27.

■ When a defendant challenges the constitutionality of a *Terry* stop, the argument often centers upon the question of whether law enforcement officers had a reasonable suspicion to initiate the stop. Such is a focal point in this case. The United States Supreme Court has stated that "[t]he concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)). Rather, in evaluating the legality of a *Terry* stop, we must consider "the totality of the circumstances—the whole picture." *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Therefore, the reasonable-suspicion inquiry is fact-sensitive and thus must

be determined on a case-by-case basis. *Lampkins v. State,* 682 N.E.2d 1268 (Ind. 1997), *modified on reh'g on other grounds,* 685 N.E.2d 698. Reasonable suspicion entails at least a minimal level of objective justification for making a stop. *Illinois v. Wardlow,* —— U.S. ——, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *Wilson v. State,* 670 N.E.2d 27. Law enforcement officers must have more than an inchoate and unparticularized suspicion or hunch, but need not have the level of suspicion necessary for probable cause. *Lampkins v. State,* 682 N.E.2d 1268.

In *Wilson,* we focused on the defendant's flight from the police officers and how that act impacted the determination of whether police had a reasonable suspicion to make an investigatory stop. We observed that flight from a police officer is sufficient to justify an investigatory stop. Further, we held that there is no seizure if the defendant refuses to yield. The following excerpt is relevant to the instant case:

> It appears then, that whether a defendant flees from police may determine whether there was reasonable suspicion for a stop. This is so because seizure of the individual does not occur until "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." [*Terry,* 392 U.S. at 20, n. 16 (88 S.Ct. 1868, n. 16.)] The United States Supreme Court has subsequently interpreted that requirement in *Terry* to mean that seizure does not occur when the suspect fails to yield. *California v. Hodari D.,* 499 U.S. [621] at 624–26, 111 S.Ct. [1547] at 1550 [113 L.Ed.2d 690 at 695–697] [1991]. "It [seizure] does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee." *Id.* Thus, there can be no violation of the Fourth Amendment until a physical seizure of the person has been accomplished."

*Wilson v. State*, 670 N.E.2d at 30–31. We went on to note the irony in the fact that, had the defendant in that case not fled, it would have enhanced his argument against the presence of reasonable suspicion.

█ In the instant case, Belcher was observed walking along the street at 3 a.m. in a high crime area (although presence in a high crime area, standing alone, is insufficient to justify an investigatory stop, it is a relevant contextual consideration in a *Terry* analysis, *Illinois v. Wardlow*, — U.S. ——, 120 S.Ct. 673, 145 L.Ed.2d 570; *Green v. State*, 719 N.E.2d 426 (Ind.Ct. App.1999); "reasonable suspicion is more easily attained at 2:15 a.m. in a high crime area," *Wilson v. State*, 670 N.E.2d at 31) near a pay phone frequently used by drug dealers. Although it was hot and humid, he wore a nylon sweat jacket. As he walked, he kept his hands in his jacket pockets, changed direction when he saw a police car (totality of circumstances includes whether, after becoming aware of police presence, the defendant attempts to avoid police, *Wilson v. State*, 670 N.E.2d 27; *but see Stalling v. State*, 713 N.E.2d 922, 924 (Ind.Ct.App.1999) ("the fact that one turns away from the police in a high crime neighborhood is not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity")) and did not look up at the officers as they approached. Finally, when Officer Adam asked to speak with him, Belcher ran away, and did not heed Officer Adam's command to stop. Thus, Belcher fled from police officers before he was seized. *See Wilson v. State*, 670 N.E.2d 27.

The United States Supreme Court recently determined that flight is a proper consideration in a *Terry* analysis. "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, — U.S. ——, 120 S.Ct. 673,

676, 145 L.Ed.2d 570 (citations omitted). The Court noted that allowing police and the courts to consider flight as a factor in determining whether reasonable suspicion existed does not conflict with the principle that an individual has the right to ignore police and go about his business if the officer approaches an individual without probable cause. The Court explained,

> [A]ny "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Id.* at 676 (citations omitted).

None of the aforementioned circumstances, when considered by itself, gave rise to a reasonable suspicion of criminal activity. *See U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Wilson v. State*, 670 N.E.2d 27. When viewed in totality, however, Belcher's flight, combined with the other facts, presented the police officers with a reasonable suspicion of criminal activity. *Illinois v. Wardlow*, — U.S. ——, 120 S.Ct. 673, 145 L.Ed.2d 570; *Wilson v. State*, 670 N.E.2d 27. Therefore, the officers executed a lawful *Terry* stop for investigative purposes. However, for purposes of search and seizure law, the stop did not occur until Belcher was apprehended following a brief chase.

█ Police need not obtain a warrant in order to lawfully seize abandoned property. *Emerson v. State*, 648 N.E.2d 705 (Ind.Ct.App.1995). The question of whether property has been abandoned is one of intent. Intent in such cases can be ascertained from words, acts, and other objective facts. *Id.* We will find that an object has been abandoned where it appears the

defendant has relinquished all interest in the property. *Id.*

■ Belcher let the gun and the ammunition magazine drop from his pocket onto the curb of a public street as he ran from the police officers, and before he was seized. Because he left the gun and the magazine in a place where he had no expectation of privacy, we find that Belcher abandoned the items. *Id.* Therefore, police officers did not require a warrant in order to retrieve the gun and the magazine from the street curb.

In summary, we hold that Belcher was not seized within the meaning of the Fourth Amendment when he fled from Officers Adam and Pflueger. Thus, the items that fell from his pocket were not subject to the *Terry* analysis because they were discarded before the officers initiated the legal *Terry* stop, and thus before Belcher was seized. Finally, Belcher abandoned the gun and the magazine in a place where he had no reasonable expectation of privacy. Therefore, the police did not require a warrant to seize them. The trial court erred in granting Belcher's motion to suppress.

Judgment reversed.

GARRARD, Sr. J., and DARDEN, J., concur.