# FOR PUBLICATION



FILED
Jan 22 2013, 8:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ERVING SANDERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1205-CR-361 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jose Salinas, Judge
Cause No. 49G14-1101-FD-6488

**January 22, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Erving Sanders appeals the trial court's denial of his motion to suppress. Sanders raises one issue, which we restate as whether the trial court erred in denying his motion to suppress. We reverse.

FACTS / COURSE OF PROCEEDINGS

At approximately 4:30 p.m. on January 28, 2011, Indianapolis Metropolitan Police Officer Keith Minch noticed the tint of the rear window of Sanders's vehicle, a blue Chevy Suburban, and initiated a traffic stop. Officer Minch approached the driver's side door of Sanders's vehicle, spoke to Sanders, and Sanders identified himself. Officer Minch then noticed the smell of marijuana. After Officer Minch asked about the smell, Sanders stated that he had "just smoked a joint." Transcript at 7. Officer Minch had Sanders exit the vehicle, conducted a search, discovered a substance which Sanders stated was cocaine, and placed Sanders under arrest.

On January 28, 2011, the State charged Sanders with possession of cocaine as a class D felony. On May 4, 2011, Sanders filed a motion to suppress the evidence obtained as a result of the traffic stop. The trial court held hearings on Sanders's motion to suppress on May 4, June 1, and November 16, 2011.

Several photographs of the Chevy Suburban were admitted into evidence during the May 4, 2011 hearing. The photographs admitted as State's Exhibits 1, 2, and 3 were taken by an evidence technician at approximately 5:30 p.m., about one hour after Officer Minch first observed Sanders's vehicle. State's Exhibits 1 and 2 show that the Suburban has side windows which are part of the front and rear doors and also side panel windows which are located over the rear wheels and cargo area of the Suburban. The photographs

2

reveal that the rear window and side panel windows of the cargo area of the vehicle were tinted to some extent and that the front windshield and the side windows which were part of the vehicle's front and back doors were either not tinted or tinted to a lesser extent than the side panel windows of the cargo area and the rear window. In the photograph admitted as State's Exhibit 3, which appears to have been taken from several feet directly behind the vehicle without anyone inside, it is possible to see the outline of the front window, the top of the steering wheel, and a portion of the windshield wiper blade. Officer Minch testified that the photograph admitted as State's Exhibit 3 reflects the view that he had when he decided to stop Sanders.

During his testimony on May 4, 2011, Officer Minch testified that he noticed Sanders's vehicle at about 4:30 p.m. and the weather was "kind of gloomy." Id. at 6. He testified that he noticed the window tint of Sanders's vehicle and that "[i]t did not allow [him] to clearly recognize or identify the occupant inside." Id. When asked why he believed that the window tinting was an infraction, Officer Minch testified "[b]ecause I could not make out the occupant inside. The three tests that I use is if I can identify approximate age, the ethnicity and the gender of the individual inside." Id. at 7. When asked the angle from which he first observed Sanders's vehicle and determined that he wished to pull Sanders over for the window tinting, Officer Minch testified that he "would have been behind him." Id. at 10. Officer Minch also indicated that he "could tell that there was one occupant" in the vehicle. Id. at 12.

On cross-examination, Officer Minch testified that he had been following "[a]pproximately twenty or thirty feet" behind Sanders's vehicle. Id. at 15. When asked

3

how long he observed Sanders before he stopped him, Officer Minch indicated that he "was behind him probably half a block." Id. Officer Minch also reiterated that he was able to see that there was an occupant in the Suburban and that the criteria he used to identify a person included age, ethnicity and gender. When asked "[h]ow many people can you determine the age, ethnicity and gender from behind their head," Officer Minch stated "[a] lot," and when asked "[s]o you think that you could tell if a person was twenty-one or fifty-two from the back of their head," Officer Minch stated "Yes." Id. at 17. When asked whether there was a significant amount of difference from the location of the sun in the sky at 4:30 and 5:30 p.m., Officer Minch stated that he could not "testify to that." Id. at 24. Officer Minch further indicated that he did not attempt to look into the Suburban through any of the vehicle's side windows to identify the occupant inside.

When asked if he agreed that the "tinting on the passenger window is not as tinted as the back . . . based upon the photos of the vehicle and your personal observation," Officer Minch responded "[f]rom the angle, it is not possible to determine that," and when asked "is the tinting in the back windows, as reflected in the photographs, darker than it is on the driver's and the passenger side," Officer Minch stated "I cannot determine that from the photo." Id. at 27. When asked "[y]ou have seen it, sir. You were there. . . . Is it lighter or not lighter," Officer Minch testified "I believe it to be about the same." Id. When asked "[a]re you saying that there are equal tinting on all windows of that vehicle," Officer Minch stated "I don't know," and when asked "[y]ou don't even have an opinion is that correct," Officer Minch replied "I cannot determine from that photo." Id. at 28.

4

Sanders testified that he had purchased the 1991 Suburban from his cousin four years earlier, that the rear window tint was on the vehicle when he bought it, and that his cousin had purchased the vehicle from D&S Auto.

In July 2011, Sanders filed a motion for an expert to view the automobile and the court granted the motion. On November 16, 2011, Sanders presented the testimony of Robert Rady who measured the window tint of the windows of the Suburban. Rady testified that the vehicle's front window and side windows which were part of the vehicle's doors were not tinted and were "clear glass." Id. at 76. Rady testified that his measurements showed that the light transmittance of the side panel windows of the cargo area and the rear back window was thirty-eight percent. Rady also indicated that he had an opportunity to visually look into the vehicle at about 4:30 p.m. on the previous day and, when asked whether he was able to clearly see through the back window, responded "[a]bsolutely." Id. at 81. Further, Rady testified that he had been tinting windows for twenty-four years, that he tinted windows for Butler Auto Group, Tom Wood Auto Group and several dealerships in Indianapolis, that he was familiar with the tinting regulations in Indiana, and that as a matter of course he tinted windows with a light transmittance of thirty-five percent for the car dealerships, which is higher than the thirty percent required by Indiana statute, in order that occupants of the vehicles could be identified and so that the windows complied with Indiana law.

On January 18, 2012, the court found that Sanders presented evidence showing that the tint of the windows of his vehicle was not unlawful. The court noted that Ind. Code § 9-19-19-4(c) provided that a window of a vehicle may not be tinted to the extent

that the occupants of the vehicle could not be easily identified or recognized through the window, that the language was "[p]retty broad," and that "[t]hat's why . . . the statute . . . shifts the burden to the defendant to prove . . . that the window tint is within the prescribed limits." Id. at 92. The court stated that "[t]he hard question for the Court is does that burden shifting, once they prove that the window tint is within the legal limits, does that affect only the driving offense or the tint charge or does that affect also, the suppression issue" and that "in other words, does it affect what the Court believes a good faith stop by the officer indicating that he believed the window tinting was not within the legal limits . . . ." Id. The court noted that "during the suppression hearing, it did come out that [the officer] was able to identify or he could see someone was inside – was able to identify there was a male inside but as far as dynamics, male, black, white or what have you, . . . he could not identify from the outside." Id. at 92-93. The court found that the investigatory stop was lawful and stated "I do believe as long as there's a good faith intent of the officer when he believes that a window tint is illegal . . . because he could not see the occupants inside, I do believe that that good faith effort or that good faith reasoning on the officer's part is enough to justify a stop." Id. at 94. The court denied Sanders's motion to suppress. Sanders sought and obtained permission to bring this interlocutory appeal.

ISSUE

The issue is whether the trial court erred in denying Sanders's motion to suppress. Our standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues. State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006). The

6

record must disclose substantial evidence of probative value that supports the trial court's decision. Id. We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. Id. However, unlike the typical sufficiency of the evidence case, we must also consider the uncontested evidence favorable to the defendant. Ransom v. State, 741 N.E.2d 419, 421 (Ind. Ct. App. 2000), trans. denied. We review *de novo* the ultimate determination of reasonable suspicion. Id. (citing Ornelas v. United States, 517 U.S. 690, 116 S. Ct. 1657, 1663, (1996)).

Sanders argues that Officer Minch's "subjective interpretation of identity and tint did not justify the traffic stop of [his] Chevy Suburban, which objectively complied with Indiana's Window tint statute" and that "[h]is mistaken application of the statute did not justify a good faith exception to uphold the stop." Appellant's Brief at 8. Sanders argues that Officer Minch mistakenly believed at the time of the stop that all of the vehicle's windows were equally dark, that in fact the front windshield and side windows were clear, that only "[t]he side and rear windows of the back end of the Suburban were tinted," and that the expert and the trial court concluded that these windows were in compliance with the statute. Id. at 9. Sanders maintains that Officer Minch's "wide latitude to determine traffic violations was unreasonable" and that "[n]o good faith existed to justify the initial stop of [] Sanders which resulted in his seizure . . . and the search of his person." Id. at 10. Sanders contends that the trial court's ruling results "in a 'heads, you lose; tails, you lose' situation. The officer is never wrong. The officer decides the tint is unlawful; the defendant does not meet his burden. The stop is upheld. The officer decides the tint is unlawful; the defendant does meet his burden. The stop is

upheld." Id. at 11. Sanders asserts that "[t]his result not only shift[s] the burden to the defendant on proving statutory compliance for his windows, but also shifts the burden of proof on warrantless seizures to the defendant" and that "the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search." Id. Sanders also argues that the trial court's statement that the statutory language "could not be easily identified or recognized" was very broad and generic, that penal statutes should be construed against the State, and that any ambiguities should be resolved in favor of the accused. Id. at 12.

The State's position is that Officer Minch had a valid basis to stop Sanders's vehicle. The State asserts that Ind. Code § 9-19-19-4 does not require an officer to conclusively determine that a window has a light transmittance of less than thirty percent before stopping a vehicle for a suspected window tint violation. The State points to Officer Minch's testimony that he could not identify the occupant of the vehicle in question and that therefore he had a valid basis to believe that the driver was in violation of the window tinting statute. The State argues that Ransom v. State, 741 N.E.2d 419 (Ind. Ct. App. 2000), trans. denied, is not applicable here because in Ransom the officer incorrectly believed it was unlawful for the defendant to operate his vehicle in reverse and that in contrast, here the officer correctly knew that Indiana law prohibits a vehicle from being driven when the vehicle's rear back window is tinted to the extent that the vehicle's occupants cannot be easily identified through that window.

ANALYSIS

The Fourth Amendment to the United States Constitution protects an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures.[1] State v. Sitts, 926 N.E.2d 1118, 1120 (Ind. Ct. App. 2010) (citing State v. Rager, 883 N.E.2d 136, 139 (Ind. Ct. App. 2008)). These safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. Id. The State has the burden of demonstrating that the measures it used to seize evidence were constitutional. Id.

"A police officer may stop a vehicle when he observes a minor traffic violation. A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause." Id. (citations omitted).

> It is the requirement of reasonable suspicion which strikes the balance between the government's legitimate interest in traffic safety and an individual's reasonable expectation of privacy. Reasonable suspicion entails some minimum level of objective evidentiary justification. Due weight must be given, not to the officer's inchoate and unparticularized suspicion or "hunch" but to the specific reasonable inferences which the officer is entitled to draw from the facts in light of his experience. A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion.

Id. (citations omitted).

Whether the officer's suspicion was reasonable is determined on a case-by-case basis by engaging in a fact-sensitive analysis of the totality of the circumstances. Id. (citing State v. Belcher, 725 N.E.2d 92, 94 (Ind. Ct. App. 2000), reh'g denied, trans.

---

[1] Sanders cites only to the Fourth Amendment and not to Article 1, Section 11 of the Indiana Constitution.

denied). "Although a law enforcement officer's good faith belief that a person has committed a violation will justify a traffic stop, Ind. Code § 34-28-5-3,[2] an officer's mistaken belief about what constitutes a violation does not amount to good faith. Such discretion is not constitutionally permissible." Id. (citing Rager, 883 N.E.2d at 139-140 (quoting Ransom, 741 N.E.2d at 422 (citing Cash v. State, 593 N.E.2d 1267, 1268-1269 (Ind. Ct. App. 1992) (quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1879-1880 (1968)) (holding that "simple good faith on the part of the arresting officer is not enough. . . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police.") (internal quotation marks and citation omitted)))).

Here, Officer Minch pulled Sanders over based upon the tint of the rear window of Sanders's Suburban. Ind. Code § 9-19-19-4(c) provides:

A person may not drive a motor vehicle that has a:

    (1)    windshield;

---

[2] Ind. Code § 34-28-5-3 provides:

Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to:

    (1)    inform the person of the allegation;

    (2)    obtain the person's:

        (A)    name, address, and date of birth; or

        (B)    driver's license, if in the person's possession; and

    (3)    allow the person to execute a notice to appear.

> (2)     side wing;
>
> (3)     side window that is part of a front door; or
>
> (4)     rear back window;
>
> that is covered by or treated with sunscreening material or is tinted to the extent or manufactured in a way that the occupants of the vehicle cannot be easily identified or recognized through that window from outside the vehicle.  However, it is a defense if the sunscreening material applied to those windows has a total solar reflectance of visible light of not more than twenty-five percent (25%) as measured on the nonfilm side and light transmittance of at least thirty percent (30%) in the visible light range.

Evidence was presented at the suppression hearing that the tint of Sanders's window was not a violation of Ind. Code § 9-19-19-4(c) and that Officer Minch mistakenly believed that Sanders's vehicle was in violation of the statute.  The State does not point to authority beyond the statute to support Officer Minch's subjective determination that he should be able to identify the approximate age, ethnicity, and gender of the individual inside a vehicle from behind the vehicle, and that if he cannot, a stop of the vehicle is justified, and indeed we are unaware of any such authority.  Further, the photographs of the Suburban admitted into evidence show the tint of the rear window and side windows, that the front windshield and side windows which were part of the vehicle's front and back doors were either not tinted or tinted to a lesser extent than the side panel windows of the cargo area and the rear window, and that, from the photograph taken from behind the vehicle and admitted as State's Exhibit 3, which Officer Minch testified reflected his view at the time he decided to stop Sanders, one can see the outline

11

of the front window, the top of the steering wheel, and a portion of the windshield wiper blade.

Based upon the evidence presented at the suppression hearings, including the photographs of the Suburban which were taken one hour after the stop and depict the window tinting, we cannot say that there was an objectively justifiable reason for the stop of the vehicle. Accordingly, under the totality of the circumstances Officer Minch lacked reasonable suspicion to stop Sanders for investigatory purposes at the time he observed Sanders's vehicle. The trial court erred in denying Sanders's motion to suppress.

For the foregoing reasons, we reverse the trial court's denial of Sanders's motion to suppress.

Reversed.

BAILEY, J., and VAIDIK, J., concur.