Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 03 2014, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KAREN M. HEARD**
Vanderburgh County Public Defender
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FABIAN LAVELL BENNETT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1403-CR-150 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

INTERLOCUTORY APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable David D. Kiely, Judge
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1308-FC-891

**November 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On the night of August 13, 2013, Evansville Police Officer William Shirley was following a car in which the Defendant-Appellant Fabian Bennett was a passenger. Before Officer Shirley could initiate a traffic stop, the car pulled into the parking lot of a business that had closed for the night. Bennett exited the vehicle and began walking toward the back of the building. Officer Shirley followed the car into the parking lot, exited his vehicle and asked Bennett to stop and talk to him. Bennett ignored Officer Shirley's requests and fled behind the building. Officer Shirley found Bennett crouched next to an air conditioning unit, arrested him, and subsequently found a firearm nearby, which Bennett admitted was his. While Bennett was being booked at the police station, officers found a small amount of marijuana in Bennett's pocket.

Plaintiff-Appellee the State of Indiana (the "State") charged Bennett with Class C felony convicted felon carrying a handgun without a license, Class A misdemeanor possession of marijuana, and with being a habitual offender. Bennett filed a motion to suppress all evidence discovered and statements made subsequent to his arrest. Bennett argues that Officer Shirley did not have reasonable suspicion to effectuate a stop, and thus the arrest was a violation of Bennett's Fourth Amendment rights and that the evidence found incident to that arrest is inadmissible as 'fruit of the poisonous tree.' Finding that Officer Shirley did have reasonable suspicion to justify the stop, we affirm the trial court's denial of Bennett's motion to suppress evidence, albeit on different grounds.

2

## FACTS AND PROCEDURAL HISTORY

On August 13, 2013, Evansville Police Officer William Shirley was patrolling the 1000 block of Covert Avenue. (Tr. 5) In the two weeks prior, there had been six to eight calls to police reporting shots fired in the area. (Tr. 6) Two other officers, Thiry and DeYoung, were parked on the same block, watching the house at 1067 Covert Avenue for suspicious activity. (Tr. 8) The officers had previously conducted a 'knock and talk'[1] at the house after receiving a report of several individuals on the porch carrying guns. (Tr. 22)

Officers Thiry and DeYoung witnessed Bennett entering the house. (Tr. 23) Sometime later, a female left the house in a car in which Bennett was a passenger. (Tr. 8, 17) Officer Shirley began following the car, at which point he noticed that the license plate light was out. (Tr. 8, 18) Officer Shirley planned to initiate a traffic stop for this reason and called Officers Thiry and DeYoung for backup. (Tr. 8-9) Before Officer Shirley could initiate the stop, the car pulled into a Burger King drive-through. (Tr. 9) Officer Shirley parked on a nearby street and waited for the car to leave. (Tr. 9) Upon receiving the food, the car pulled directly to an adjacent parking lot of a Rent One-Auto Zone, a business which was closed at the time. (Tr. 9-10) As Officer Shirley was driving toward the Auto Zone parking lot, Bennett exited the car and began to walk in the opposite direction from Officer Shirley. (Tr. 10, 19) After Officer Shirley parked and exited his vehicle, he asked Bennett to come back and speak with him. (Tr. 11) Bennett mumbled that he was "going to check on

---

[1] An investigative technique where one or more police officers approaches a private residence, knocks on the door, asks occupants about a criminal complaint(s), and requests consent from the owner to search the residence. *Hayes v. State*, 794 N.E.2d 492, 496 (Ind. Ct. App. 2003)

the guys back there" while continuing to walk away from Officer Shirley. Tr. p. 11

Upon reaching the corner of the building, Bennett darted behind the building, at which point Officer Shirley ran after him. (Tr. 12) Officer Shirley found Bennett crouched next to an air conditioning unit behind the building and took him into custody. (Tr. 13) Soon after, Officer Thiry found a firearm near the air conditioning unit. (Tr. 13) After reading Bennett his *Miranda*[2] rights, Bennett admitted to Officer Shirley that he knew he could not have a gun and that he would be going away for a while. (Tr. 15) While Bennett was being processed at the police station, Officer Shirley found a clear plastic baggie containing marijuana in Bennett's pocket. (App. 42)

The State charged Bennett with Class C felony convicted felon carrying a handgun without a license, Class A misdemeanor possession of marijuana, and with being a habitual offender. (App. 9, 11) Bennett filed a motion to suppress all evidence discovered and all statements made subsequent to his arrest. (App. 12-14) Following a hearing, the trial court denied the motion, finding that no seizure occurred until Bennett was found behind the building and, by that time, Officer Shirley had reasonable suspicion to investigate Bennett for criminal trespass. (App. 40-41) Bennett brings this interlocutory appeal challenging the trial court's denial of his motion to suppress as to the handgun and marijuana.[3] (Appellant's Br. 3)

## DISCUSSION AND DECISION

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. *Davis v. State*, 858 N.E.2d 168, 171 (Ind. Ct. App. 2006) (citing *Gonser v. State*, 843 N.E.2d 947, 949 (Ind. Ct. App. 2006). We will not reweigh the evidence, and will consider conflicting evidence in the light most favorable to the trial court's ruling. *Davis*, 858 N.E.2d at 171. "On appellate review, we will affirm the trial court's ruling on a motion to suppress if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory." *Id.*

### A. *The Firearm*

Bennett argues that Officer Shirley lacked the articulable reasonable suspicion necessary to effectuate a valid stop under the Fourth Amendment to the United States Constitution. Therefore, he argues, the gun seized subsequent to the arrest should be suppressed. However, the legitimacy of the stop is irrelevant to this inquiry because Bennett abandoned the gun prior to the arrest.

Abandoned property is not subject to Fourth Amendment protection and is subject to lawful seizure without a warrant. *Wilson v. State*, 825 N.E.2d 49, 51 (Ind. Ct. App. 2005); *Gooch v. State*, 834 N.E.2d 1052, 1053-54 (Ind. Ct. App. 2005). For Fourth Amendment purposes, an individual is not "seized" by police until he is stopped through physical force or submits to the assertion of authority by police. *California v. Hodari D.*, 499 U.S. 621 (1991); *Wilson*, 825 N.E.2d at 51. This court and the United States Supreme Court have concluded

---

[3] In this appeal, Bennett does not argue that his statements made to officers subsequent to his arrest should have been suppressed. Nevertheless, those statements would be admissible for the same reasons outlined in Section II of this memorandum decision.

that evidence which a suspect drops prior to being "seized" by police is abandoned, whether or not the subsequent seizure is lawful. *Wilson*, 825 N.E.2d at 52; *Gooch*, 834 N.E.2d at 1054; *Hodari D.*, 499 U.S. 621.

The facts in *Wilson* are as follows:

[T]wo police officers were patrolling an Indianapolis neighborhood. One of the officers saw Wilson, who was on a bicycle, leaning inside a red vehicle. The vehicle was located in a high drug trafficking area. Suspecting that Wilson was attempting to sell drugs, the officers circled around to speak with Wilson. As the officers approached the intersection from behind, the driver of the vehicle drove away. After seeing the officers approaching, Wilson also left the intersection. The officers exited their vehicle and ordered Wilson to stop. Wilson continued to ride away and dropped a black bag under a parked car. The officers again ordered Wilson to stop, and when he refused, the officers removed him from the bicycle and placed him in handcuffs. One of the officers recovered the bag, which contained cocaine. After being charged with possession of cocaine, Wilson moved to suppress the evidence, which the trial court subsequently denied. Wilson was then found guilty of the charged offense.

*Gooch*, 834 N.E.2d at 1054 (citing *Wilson*, 825 N.E.2d at 50). In affirming the conviction, we observed that "[w]hen Wilson threw the black cloth bag to the ground, the items were subject to lawful seizure by the police. Wilson had not been "seized" at the time he dropped the black cloth bag; therefore, the bag containing cocaine was not the product of a seizure and was properly admitted into evidence over Wilson's Fourth Amendment objection." *Wilson*, 825 N.E.2d at 52. We reached the same conclusion in *Gooch*, 834 N.E.2d at 1054-55 (Gooch, after being commanded to stop by police, tossed a bag of cocaine under a parked vehicle, and was immediately arrested thereafter. "Gooch had not been 'seized' at the time he tossed the bag of cocaine, so the drugs were not the product of an illegal seizure."); *See*

*also Hodari*, 499 U.S. 621 (Hodari dropped crack cocaine as he fled a police officer. Although the officer did not have reasonable suspicion to justify stopping Hodari, the court found that the seizure did not occur until Hodari was tackled by the officer, and so the abandoned crack cocaine was admissible.).

In the instant case, Bennett abandoned his firearm prior to being seized by Officer Shirley. Bennett was not seized until Officer Shirley found him near the air conditioning unit and placed him in handcuffs. Bennett then admitted that he "tried to ditch the gun." Tr. p. 15. Because the gun was found by Officer Thiry after it had been abandoned, it was subject to lawful seizure without a warrant and not discovered incident to the arrest. *Wilson*, 825 N.E.2d at 51; *Gooch*, 834 N.E.2d at 1053-54. Hence, the firearm was properly admitted into evidence, and the trial court properly denied Bennett's motion to suppress it.

### B. The Marijuana

Bennett also argues that the marijuana found during process was found as a result of an unlawful arrest and should be suppressed. Specifically, Bennett contends that Officer Shirley had no reasonable suspicion that Bennett was engaged in criminal activity when he asked Bennett to stop and talk to him, and therefore, Bennett had the right to ignore that request and walk away.

The Fourth Amendment to the United States Constitution provides that the right of the people to be secure in their persons against unreasonable search and seizure shall not be violated. U.S. Const. amend. IV. At a minimum, the government's seizure of a citizen must rest on specific, articulable facts that lead an officer to reasonably suspect that criminal

7

activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

In *Gaddie v. State*, the Indiana Supreme Court held that a law enforcement officer's order to stop must be based on reasonable suspicion or probable cause of criminal activity. 10 N.E.3d 1249, 1256 (Ind. 2014). The Court found that Gaddie had the right to walk away from an officer and ignore the officer's request that he stop because the officer had no reasonable suspicion that he was engaged in criminal activity. *Id*. In *Murdock v. State*, the Indiana Supreme Court clarified the bounds of its decision in *Gaddie*, finding that an officer had reasonable suspicion to stop Murdock due to his attempted flight:

> In this case, the defendant ran when the officer appeared, engaged in furtive and evasive activity in a high-crime area, was uncooperative, and matched the description of the suspect. [*Illinois v. Wardlow*, 528 U.S. 119, 124-125, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570, 576-77 (2000)] (concluding that a suspect's unprovoked flight upon noticing the police in an area known to have a high incidence of drug trafficking supported a finding of reasonable suspicion).

10 N.E.3d 1265, 1268 (Ind. 2014). The Court in *Murdock* went on to distinguish the facts from *Gaddie*:

> In contrast, the police officer in *Gaddie* responded to a disturbance report. When the officer arrived, a number of people were standing in the front area of a private residence, but the defendant was walking away from the scene, towards the backyard, and continued walking away after the officer's order to stop. The officer in *Gaddie* testified that he had not seen the defendant or anyone else commit a crime prior to ordering the defendant to stop. **While a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion."** *Gaddie*, 10 N.E.3d at 1256 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570, 576 (2000)); see *State v. Atkins*, 834 N.E.2d 1028, 1033-34 (Ind. Ct. App. 2005) (holding that the investigatory stop lacked reasonable suspicion that criminal activity was afoot but adding that "[t]his case might have been different if [the defendant] had fled, engaged in furtive activity, and was uncooperative, or if [the officer] had a description of

8

the suspect that was corroborated upon seeing [the defendant].”).

10 N.E.3d at 1267 (emphasis added); *see also Wilson v. State*, 670 N.E.2d 27, 31 (Ind. Ct. App. 1996) (“It appears then, that whether a defendant flees from police may determine whether there was reasonable suspicion for a stop.”)

In *State v. Belcher*, this court was confronted with a factual scenario similar to the instant case. 725 N.E.2d 92 (Ind. Ct. App. 2000). In *Belcher*, officers were patrolling a high-crime area at night when they observed Belcher walking down the street. *Id.* at 93. Belcher changed direction upon seeing the officers’ car, at which point the officers pulled up to Belcher and asked him to come over to the car. *Id.* Belcher responded that he “didn’t do anything” and then took off running when the officers began exiting their car. *Id.* Before being apprehended by the officers, Belcher threw a handgun and magazine from his pockets while fleeing. *Id.* Although we found that the firearm was abandoned, and so not subject to Fourth Amendment protections, we also addressed whether the officers had reasonable suspicion of criminal activity necessary to initiate the investigatory *Terry* stop. *Id.* at 95. We concluded that none of the circumstances of the stop, when considered alone, would have given rise to reasonable suspicion, however, “[w]hen viewed in totality, [] Belcher’s flight, combined with the other facts, presented the police officers with a reasonable suspicion of criminal activity.” *Id.* The facts supporting this determination were the high-crime area, late hour of the night, Belcher was wearing a nylon jacket with his hands in his pockets despite the heat and humidity, Belcher turned in the opposite direction upon seeing police, and Belcher’s attempted flight. *Id.*

As in *Belcher*, the totality of circumstances of the instant case were sufficient to create reasonable suspicion. Although Bennett is correct in his assertion that he had the right to *walk* away, the evidence shows that Bennett was walking only until he reached the corner of the Rent One building, at which point he "took off" and "darted" behind the building which "caused [Officer Shirley] to run to try to catch up." Tr. pp. 12-13. As in *Murdock* and *Belcher*, Bennett engaged in furtive and evasive activity (fleeing and hiding), was uncooperative (ignored Officer Shirley's request to stop), and had come from a house where there was believed to be a significant amount of criminal activity. Specifically, the house Bennett had left was the subject of six to eight "shots fired" reports in the prior two weeks and there were bullet holes in the side of the house. Additionally, Bennett was walking in a parking lot which was marked with "no trespass" signs at a time when the business was closed. Bennett's refusal to cooperate, in addition to the other indicia of criminal activity were sufficient to create reasonable suspicion necessary to justify a stop. Accordingly, the marijuana found on Bennett as a result of the stop was properly admitted into evidence.

The judgment of the trial court is affirmed.

BARNES, J., and BROWN, J., concur

10