Donald L. GREEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 04A03–9906–CR–233.

Court of Appeals of Indiana.

Nov. 17, 1999.

Dennis L. Woods, Fowler, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

STATON, Judge

Following a jury trial, Donald L. Green appeals his conviction for possession of marijuana, a Class D felony.[1] Green raises one issue on appeal, which we restate as: whether the trial court erred by refusing to suppress evidence obtained following an investigatory stop of Green.

We reverse.

On September 16, 1998, Green was an inmate at the Benton County Jail where he was a participant in a work release program. At 8:15 a.m. on that day, George

---

1. IND.CODE § 35–48–4–11 (1998).

Frantz, a special agent for the Bi–State Drug Taskforce, encountered Green. The circumstances of the encounter are that Frantz drove to a wooded location in Benton County that had been used a year earlier to store marijuana. Previously, Frantz had visited the location several times to look for evidence and to determine whether anyone had been on the property. Frantz accessed the property via a farm lane that was wide enough for one vehicle. As he drove down the lane, Frantz observed a vehicle that was driving on the lane towards him. Both vehicles stopped, and Frantz held his badge out the window of his car.[2] Frantz exited his vehicle and approached the driver of the other car, who had exited his own vehicle. Frantz asked the driver what he was doing, and the driver responded that he was fishing. Frantz asked him his name, and the man indicated that his name was Donald Green. Frantz also asked him for his address, and Green responded, "I suppose you could say the jailhouse." Record at 175. Frantz then recalled that Green was serving a jail sentence and was on work release. Frantz asked Green for his consent to search the vehicle. Green consented. Frantz found marijuana in the car's glove compartment.

Before trial, Green moved to suppress the marijuana on the theory that Frantz lacked a reasonable suspicion to stop Green and that the marijuana found in the vehicle was a product of the illegal stop. The trial court denied Green's motion. The trial court also overruled Green's objection to the introduction of this evidence at trial. Green was convicted of possession of marijuana. This appeal ensued.

■■■ Green contends that the trial court erred by denying his motion to suppress because Frantz lacked a reasonable suspicion to conduct the investigatory stop of Green and the marijuana was discovered as a result of this unconstitutional stop. The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specific and well delineated exceptions. *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). One recognized exception is where a police officer detains a person for investigative purposes. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). With regards to a *Terry* stop, our supreme court has stated:

> An investigatory stop of a citizen by an officer does not violate that citizen's constitutional rights where the officer has a reasonably articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968); *United States v. Hatch*, 827 F.Supp. 536, 541 (N.D.Ind.1993). Probable cause is not necessary. *Id.* Just what constitutes reasonable suspicion is determined on a case by case basis. *Baran v. State*, 639 N.E.2d 642, 644 (Ind.1994). It is also determined by the totality of the circumstances. *Hatch*, 827 F.Supp. at 541; *Platt v. State*, 589 N.E.2d 222, 226 (Ind.1992). "If the facts known by the police at the time of the 'stop' are such that a man of reasonable caution would believe that the action taken was appropriate, the command of the fourth amendment is satisfied." *Platt*, 589 N.E.2d at 226 (citing *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880–81).

*Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind.1997), *modified on rehearing*, 685 N.E.2d 698 (Ind.1997). The State bears the burden of proving that a warrantless search falls within a proper exception to the warrant requirement. *Berry v. State*, 704 N.E.2d 462, 465 (Ind.1998).

■■■ When reviewing a trial court's ruling on a motion to suppress, we exam-

---

**2.** Frantz was not in uniform nor was his vehicle marked.

ine the evidence most favorable to the ruling, together with any uncontradicted evidence. *State v. Joe*, 693 N.E.2d 573, 574–75 (Ind.Ct.App.1998), *trans. denied.* However, the ultimate determination of reasonable suspicion is reviewed *de novo.* *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).

■ Here, the evidence reveals that Frantz stopped his car in front of Green's on a narrow lane, showed Green his badge, and began asking him questions. This was an investigatory stop to which Fourth Amendment protections applied. *State v. Nesius*, 548 N.E.2d 1201, 1203 (Ind.Ct. App.1990) (even a brief stop of an automobile and detention of its occupants constitutes a seizure); *Williams v. State*, 611 N.E.2d 649, 651 (Ind.Ct.App.1993), *trans. denied* (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991)) (consensual encounters are not seizures, but an encounter is consensual only where "a reasonable person would feel free 'to disregard the police and go about his business' ").

Frantz, an officer with experience and training in drug law enforcement, knew that the property on which he found Green had been used to store marijuana approximately one year earlier and that it was the harvest season for marijuana. Other than his presence on this suspect property, however, Green had done nothing to indicate that he was engaged in or about to engage in criminal activity himself. Assuming, somewhat charitably, that this particular location could be considered a high crime area, Green's presence alone did not justify an investigatory stop.

■ A defendant's presence in a high crime area, standing alone, is an insufficient ground upon which to conduct a search, although said presence can be considered as a factor in the totality of the circumstances confronting the officer at the time of the stop. *Wilson v. State*, 670 N.E.2d 27, 31 (Ind.Ct.App.1996) (citing *U.S. v. Evans*, 994 F.2d 317 (7th Cir.1993), *cert. denied*, 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993)). In *Reeves v. State*, 666 N.E.2d 933 (Ind.Ct.App.1996), this court held that an officer lacked reasonable suspicion to make an investigatory stop where the defendant was standing in a high crime area with a companion, the defendant's companion had avoided eye contact with the officer, and the two began walking as the officer drove past. *Id.* at 935. In *Williams v. State*, 477 N.E.2d 96 (Ind.1985), *reh. denied*, our supreme court held that an investigatory stop was unjustified where the defendant was walking on a well-lit sidewalk at 1:30 a.m. in a high-crime district and the defendant was carrying something under his arm. *Id.* at 99. The United States Supreme Court has held that "[w]alking in an alley, in a neighborhood with a high incidence of crime, and 'looking suspicious' " is not sufficient to justify an investigatory stop. *See Tumblin v. State*, 664 N.E.2d 783, 784 (quoting *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979)). Similarly, Green's mere presence in an area known for drug activity was insufficient to create a reasonable suspicion justifying Frantz's investigatory stop.[3]

■ The State contends that reasonable suspicion was unnecessary in this case because Green had waived his Fourth Amendment protections as a condition of his work release. The Benton County Sheriff testified that Green had signed an agreement in conjunction with the work release program wherein Green had agreed to waive his "4th Amendment right with regard to a search and seizure by any law enforcement officer." Record at 168. The sheriff could not produce the document Green signed, but he testified that the work release rules had been discussed

---

**3.** We note that Frantz did not recognize Green when he first stopped Green. Thus, Green's status as a work release participant was not a factor confronting Frantz at the time of the stop and cannot be used to justify the stop.

with Green "point by point." Record at 169.

In *Purdy v. State,* 708 N.E.2d 20 (Ind. Ct.App.1999), this court held that "a condition of probation requiring the probationer to submit to a search without reasonable suspicion is overly broad...." *Id.* at 23 (citing *Rivera v. State,* 667 N.E.2d 764, 767–68 (Ind.Ct.App.1996) (Staton, J., concurring)), *trans. denied.* In so holding, we relied on the United States Supreme Court's decision in *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). In *Griffin,* the Supreme Court held that supervision of probationers is a "special need" of the probation system, which permits "a degree of impingement upon privacy that would not be constitutional if applied to the public at large." 483 U.S. at 875, 107 S.Ct. 3164. However, the Supreme Court specifically observed in *Griffin* that the "permissible degree" of impingement "is not unlimited." *Id.* The Court held that the special needs of Wisconsin's probation system justified replacement of the probable cause standard with "reasonable grounds." *Id.* at 875–76, 107 S.Ct. 3164.

Like probation, a work release program is "simply one point ... on a continuum of possible punishments," and as such, work release participants "do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special ... restrictions.'" *Id.* at 874, 107 S.Ct. 3164 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Generally, work release is a more restrictive form of punishment than probation since work release participants are actually jail inmates who must return to the jail when not working or participating in other sanctioned activities. *See* IND.CODE § 11–12–5–2 (1998). Nevertheless, an inmate who has been released for work closely resembles a probationer. Like the probationer, the work release participant enjoys "conditional liberty" subject to the terms of the work release program. *Id.* We conclude that our holding in *Purdy* applies equally to the terms and conditions of work release. Therefore, a condition of work release that purports to require a participant to submit to a search or seizure without reasonable suspicion is overly broad.

■ Frantz lacked reasonable suspicion to conduct an investigatory stop of Green. Moreover, the terms of Green's work release could not justify an investigatory stop of Green while he was on work release without reasonable suspicion. Accordingly, the marijuana found in Green's vehicle was obtained as the result of an improper investigatory stop. The trial court erred by denying Green's motion to suppress.

Reversed.

NAJAM, J., and RUCKER, J., concur.