**Ronald L. BOVIE, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 48A04–0105–CR–206.**

Court of Appeals of Indiana.

Jan. 17, 2002.

Christopher A. Cage, Hulse Lacey Hardacre Austin & Shine, P.C., Anderson, IN, Attorney for Appellant.

## OPINION

SULLIVAN, Judge.

Ronald L. Bovie appeals the trial court's revocation of his probation. The court found that Bovie violated his probation by Resisting Law Enforcement,[1] a Class A misdemeanor, and by possessing paraphernalia. He presents three issues for our review, only two which we will address:

(1) whether his constitutional rights were violated by an illegal investigatory stop, and

(2) whether he was provided notice of the grounds upon which the trial court relied in revoking his probation.

We reverse.

1. Ind.Code § 35–44–3–3 (Burns Code Ed. Repl.1998).

■■■ We first note that the State declined to file an appellee's brief. The obligation of controverting arguments presented by the appellant properly remains with the State. *Blunt–Keene v. State,* 708 N.E.2d 17, 19 (Ind.Ct.App.1999). When the appellee does not submit a brief, the appellant may prevail by making a prima facie case of error—an error at first sight or appearance. *Id.* However, we are still obligated to correctly apply the law to the facts of the record to determine if reversal is required. *Id.*

The record reveals that in 1996, Bovie received a ten-year sentence following a guilty plea for the crime of Dealing in Cocaine. He served one year of the ten-year sentence on in-home detention and the remaining nine years were suspended. However, Bovie was placed on probation for the nine years which made up the remainder of the sentence.

On December 5, 2000, Detective Kevin Early of the Anderson Police Department, and a member of the Madison County Drug Task Force, was observing a house, based upon information he had received that drugs were sold and used at the location. At approximately 11:10 p.m., Detective Early witnessed two men walk from the residence, get into a car, and leave. Detective Early, in an unmarked vehicle, followed the car which Bovie was driving. Detective Early noticed a headlight was out on Bovie's car so he called for a uniformed officer in a marked car to make a traffic stop. Before the marked car arrived, Bovie pulled into a gas station and parked. Detective Early approached the vehicle, showing his badge, in order to stop Bovie. The passenger, a known drug user and dealer, told Bovie to "go" as Detective Early approached. Transcript at 53. As Bovie "took off," a marked car pulled in behind him with lights flashing. Transcript at 57. Bovie pulled forward to the entrance to the street before stopping. Bovie was then approached by Detective Early and a uniformed officer. Bovie was arrested, and a subsequent search of his vehicle produced a burnt piece of wire mesh under the passenger seat, which tested positive for cocaine.

## I

### *Investigatory Stop*

Upon appeal, Bovie contends that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by Detective Early. He argues that Detective Early did not have reasonable suspicion to stop him in relation to any drug activity based upon the informant's tip. He also contends that he could not be stopped for a traffic violation because of the restriction of Ind.Code § 9–30–2–2 (Burns Code Ed. Repl.1997).

### A. *Constitutional Restraints*

■■■ In a probation revocation setting, the State was required to show by a preponderance of the evidence that Bovie knowingly or intentionally fled from Detective Early after Early had, by visible or audible means, identified himself and ordered Bovie to stop. I.C. § 35–44–3–3. However, before an individual may actually resist law enforcement by fleeing, the individual must have a duty to stop. This duty to stop arises in two of the three levels of police investigation. In *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct. App.2000), *reh'g denied, trans. denied,* this court noted that the three levels of police investigation are an arrest or detention based upon probable cause, an investigatory stop based upon a reasonable and articulable suspicion, and a consensual encounter in which no Fourth Amendment right is implicated. In this case, we are presented with a situation in which Detective Early was attempting to either make an

investigatory stop or to enter into a consensual encounter with Bovie.

In a consensual encounter, the individual remains free to disregard the police officer and to walk away. *Id.* at 664. Only when an individual no longer remains free to leave does an investigatory stop begin. *Luster v. State,* 578 N.E.2d 740, 744 (Ind.Ct.App.1991). It follows that Bovie could be found guilty of resisting law enforcement only if he was the subject of an otherwise legal stop. An investigatory stop may be made when a police officer can point to reasonable and articulable facts, and inferences taken from those facts, which would warrant an intrusion upon the constitutionally protected rights of an individual. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Green v. State,* 719 N.E.2d 426, 428 (Ind. Ct.App.1999). An investigatory stop is proper if the facts known to the police officer at the time of the stop are such that a man of reasonable caution would believe that the action taken by the officer was appropriate. *Green,* 719 N.E.2d at 428. Reasonable suspicion is determined on a case-by-case basis. *Id.*

In the case before us, outside of the headlight violation, the only basis for the stop was that Detective Early witnessed Bovie and his passenger, a known drug user and seller, leave a "known drug house," proceed to a gas station, and stop their vehicle. These facts alone do not rise to the level of the reasonable and articulable suspicion required in order to make an investigatory stop. *See Green,* 719 N.E.2d at 430 (holding that the act of driving down a narrow lane that was the access to a wooded area that a detective had been watching because of its use to store marijuana, without accompanying suspicious factors, did not lead to reasonable suspicion to support an investigatory stop); *see also Johnson v. State,* 659 N.E.2d 116 (Ind.1995) (holding that there was no reasonable suspicion based upon confidential informant's tip that individual driving a brown Jaguar would be in a particular part of town and carrying drugs because no specific details beyond those known to the general public were provided). While Detective Early may have had a "hunch" that something was amiss, a "hunch" is not sufficient to authorize an investigatory stop. *Stalling v. State,* 713 N.E.2d 922, 925 (Ind.Ct.App.1999).

While we can imagine situations in which Detective Early would have had reasonable and articulable suspicion to make an investigatory stop, we do not see any in the record. Without a reasonable and articulable suspicion to uphold an investigatory stop based upon drug activity, the contact between Bovie and Detective Early was either a consensual encounter in which Bovie was free to leave without any legal repercussions or must be grounded in statutory authority to make a stop.

### B. Statutory Restraints

Indiana Code § 9–30–2–2 provides that in order for an officer to make an arrest or issue a traffic information or summons for a violation of a law regulating operation of a motor vehicle, the officer must be either wearing a uniform and badge, or driving a clearly marked police vehicle. The facts are undisputed that Detective Early only displayed his badge, and that he was not wearing a uniform or driving a marked vehicle. This court has rejected several attempts by the State to seek convictions based upon police officers acting in contravention of this statute. *See Miller v. State,* 641 N.E.2d 64 (Ind.Ct.App. 1994), *trans. denied; State v. Caplinger,*

616 N.E.2d 793 (Ind.Ct.App.1993). *But see James v. State,* 622 N.E.2d 1303 (Ind. Ct.App.1993) (focusing upon the meaning of "arrest," and not the fact that the officer was out of uniform and driving an unmarked car, in determining that the officer did not take James into custody and could detain an individual for erratic driving). Implicit in the language of I.C. § 9–30–2–2 is the purpose behind the statute—to protect drivers from police impersonators and to protect officers from resistance should they not be recognized as officers. *State v. Hart,* 669 N.E.2d 762, 765 (Ind.Ct.App.1996). For that purpose, there is no difference between an actual "arrest" or an investigatory stop. The risk to the driver and officer is the same in both situations. For that reason, to the extent that the holding in *James* is inconsistent with our holding in this case, we decline to follow it.[2]

Here, while Detective Early was attempting to fulfill his duties as a police officer, he may have attempted to make a stop for a headlight violation which he was not authorized to do.[3] Contrary to the requirements of the statute, he was not wearing a uniform nor was he driving a marked car. Any reliance that the trial court may have put upon the headlight violation as providing grounds for the stop was error.

**2.** Similarly, although factually akin to our case, the court in *Spears v. State,* 412 N.E.2d 81, 83 (Ind.Ct.App.1980) only considered whether the officer in civilian clothes and driving his personal vehicle identified himself "by visible or audible means." Again, the State's decision to not brief the matter justifies disregard for the arguable implications of the *Spears* holding. Nevertheless, to the extent that *Spears* appears to suggest a contrary result in this case, we decline to follow it.

**3.** At the probation revocation hearing, Detective Early admits that he could not make a

## II

### *Notice of Probation Violation*

▮▮▮▮ Bovie also asserts that the trial court partially based the probation revocation upon Bovie's being in possession of drug paraphernalia,[4] which was not a violation listed on the Notice of Violation of Probation.[5] An individual at a probation revocation hearing does not posses the same rights with which he was endowed prior to a conviction. *Gleason v. State,* 634 N.E.2d 67, 68 (Ind.Ct.App.1994). However, the Due Process Clause of the Fourteenth Amendment does provide certain protections to an individual at a probation hearing. *Id.; Long v. State,* 717 N.E.2d 1238, 1239 (Ind.Ct.App.1999). Among these rights is written notice of the claimed violations of probation which are sufficiently detailed to allow the probationer to prepare an adequate defense. *Long,* 717 N.E.2d at 1240. It is error for a probation revocation to be based upon a violation for which the defendant did not receive notice. *Hubbard v. State,* 683 N.E.2d 618, 622 (Ind.Ct.App.1997).

Here, notice was clearly not provided that grounds for Bovie's probation revocation was that he possessed drug paraphernalia. There was no mention of that violation in the Notice of Violation of Probation. Detective Early conceded, in response to defense counsel's question as to whether Bovie was being charged with respect to

stop for the headlight violation and that he called for a marked car for that purpose.

**4.** The Order on Violation of Probation states, "in that he resisted law enforcement, possessed paraphernalia and has not behaved well in society." Appendix at 50.

**5.** The Notice of Violation of Probation states, "you are alleged to have committed the following new criminal offense(s): Resisting Law Enforcement (Misdemeanor), as filed in Anderson City Court." Appendix at 47.

the possession of paraphernalia, that the only violation Bovie was facing arising out of Detective Early's report was resisting law enforcement. It was error for the trial court to rely upon the possession of paraphernalia in revoking Bovie's probation.

The judgment of the trial court is reversed.

MATTINGLY–MAY, J., and BARNES, J., concur.