**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THARL PINKSTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  38A02-1210-CR-829 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JAY CIRCUIT COURT
The Honorable Brian D. Hutchison, Judge
Cause No. 38C01-0610-FB-19

**July 8, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

<u>STATEMENT OF THE CASE</u>

Tharl Pinkston ("Pinkston") appeals the revocation of his probation.

We affirm.

<u>ISSUE</u>

Whether the trial court abused its discretion when it revoked Pinkston's probation.

<u>FACTS</u>

On October 27, 2006, Pinkston pled guilty to, and was convicted of Dealing in a Schedule II Controlled Substance.[1] Pinkston was sentenced to six (6) years, four (4) of which were suspended and ordered to be served on probation. Among his probation conditions, Pinkston was to "behave well and not commit any other criminal offenses." (App. 30).

On June 9, 2012, Pinkston spent the day swimming at Pink Lake in Adams County with friends. Afterwards, Pinkston began walking down a roadway to return home to Jay County. While walking, a car with five individuals pulled over to give Pinkston a ride. Pinkston entered the vehicle and became one of four passengers seated in the rear seat of the vehicle. The individuals in the vehicle began to ask Pinkston questions about his identity and his destination. The passenger in the front seat mumbled the word snitch. At that point, the remaining passengers in the vehicle proceeded to physically assault Pinkston, after which he passed out and awoke bloodied on the side of the road.

---

[1] Ind. Code § 35-48-4-2.

At 9:00 p.m., Officer Kevin Pugh ("Officer Pugh") of the Jay County Sheriff's Department, was dispatched to the area of County Road 1100 West concerning a disturbance. Upon his arrival, Officer Pugh saw Pinkston walking in the middle of the road. Pinkston was naked, yelling obscenities, and carrying a pair of shorts in his hand. Officer Pugh turned on his emergency lights and motioned for Pinkston to step in front of the patrol car. Pinkston did not obey. Officer Pugh then exited his vehicle and grabbed a hold of Pinkston. Pinkston was asked his name and what had happened. His only response was "He doesn't mess around." (Tr. 8). Officer Pugh then proceeded back to his vehicle to radio dispatch. At that moment, Pinkston took off running down the road. Officer Pugh chased and caught up to Pinkston in about sixty yards. Pinkston was then placed under arrest. Officer Pugh then observed that Pinkston was very incoherent but did not smell of alcohol. Officer Pugh asked Pinkston "What was he on?" and Pinkston replied, "this stuff," and tapped his forearm. (Tr. 10). Paramedics were called to the scene to assess Pinkston's condition. The paramedics informed Officer Pugh that Pinkston did not need immediate medical attention and that he could be taken to jail. The paramedics did not make any comments about potential drug or alcohol use. After the examination, Pinkston was taken to jail.

On June 15, 2012, the State filed a petition alleging that Pinkston had violated his probation by committing the offenses of public intoxication and resisting law enforcement by fleeing. On June 20, 2012, an initial hearing was held and Pinkston was made aware of the allegations and appointed a public defender.

On September 25, 2012, an evidentiary hearing was held concerning the allegations. At the hearing, the State called Officer Pugh and Ronald May ("May), Pinkston's probation officer, as witnesses. Officer Pugh testified that on the day in question, he encountered Mr. Pinkston, nude, standing in the middle of the road, very incoherent. Additionally, when asked about Pinkston's drug use, Officer Pugh testified that Pinkston stated he was using "this stuff" while tapping his forearm. (Tr. 10, 16). Officer Pugh also stated that Pinkston ran off when he returned to his car to radio dispatch. May testified that Pinkston was indeed on probation at the time of the incident and that the terms of his probation included not committing any additional crimes.

Pinkston testified that, in an effort to return home to Jay County, he hitched a ride with a car full of people and was beat up shortly after. He stated that during the beating he blacked out and woke up to Officer Pugh. Contrary to Officer Pugh's testimony, Pinkston stated that he surrendered himself to the officer. The defense also presented Pinkston's dental records as evidence of the injuries he sustained due to the physical altercation in the car. The trial court accepted Pinkston's statements regarding the physical altercation as true.

Based on the credibility of the witnesses and supporting evidence, the trial court found that Pinkston had committed the offenses of public intoxication and resisting law enforcement.[2] The trial court revoked Pinkston's probation and ordered him to serve his previously suspended four (4) year sentence in the Department of Correction.

---

[2] The trial court also found that Pinkston violated his probation by committing the offenses of public nudity and disorderly conduct. These offenses, however, were not alleged in the State's notice of violation of probation. A defendant facing probation revocation is entitled to certain due process rights, including written notice of the

4

Pinkston asserts that the trial court abused its discretion in revoking his probation. We disagree.

We review a decision to revoke probation for an abuse of discretion. *Sanders v. State,* 825 N.E.2d 952 (Ind. Ct. App. 2005), *trans. denied.* An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court. *Id.* Whether to revoke probation is within the trial court's discretion. *Hubbard v. State*, 683 N.E. 2d 618, 620 (Ind. Ct. App. 1997).

When reviewing a decision to revoke probation, we will neither reweigh the evidence nor assess witness credibility. *Id.* We will affirm revocation if, considering only the probative evidence and reasonable inferences therefrom, there is sufficient evidence supporting the conclusion that the probationer is guilty of violating any condition of his probation. *Hubbard*, 683 N.E.2d at 620; Ind. Code § 35-38-2-3. The violation of a single condition of probation is sufficient to permit a trial court to revoke probation. *Smith v. State*, 727 N.E.2d 763, 766 (Ind. Ct. App. 2000). The State must prove evidence of a violation of probation by a preponderance of the evidence. I.C. § 35-38-2-3.

---

claimed violations of probation. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). Additionally, "it is error for a probation revocation to be based upon a violation for which the defendant did not receive notice." *Bovie v. State*, 760 N.E.2d 1195, 1159 (Ind. Ct. App. 2002) (citing *Hubbard v. State*, 683 N.E.2d 618, 622 (Ind. Ct. App. 1997)). However, such error may be harmless, such as here, where the trial court finds that the defendant violated a condition of probation for which he did receive notice. *See Hubbard*, 683 N.E.2d at 622 (holding that the trial court erred by revoking the defendant's probation based on violation not set forth in the petition to revoke but determining that any error was harmless because the trial court had also determined that defendant had violated several conditions for which he did receive notice).

Pinkston contends that the trial court abused its discretion when it found him in violation of probation when it also indicated that it accepted as true, his testimony that he was attacked and knocked unconscious. Pinkston argues that there was insufficient evidence to find him guilty of public intoxication and that, due to his injuries, he lacked the requisite intent to commit the offenses of public intoxication and resisting law enforcement.

The record reveals that when Officer Pugh first encountered Pinkston he was walking down a public road, completely nude, yelling obscenities, with a pair of shorts in his hand. Further, Officer Pugh testified that Pinkston was incoherent, and when questioned about the source of his delusional state, he alluded to intravenous drug use by stating that he was on "that stuff" and tapping his forearm. (Tr. 10). Voluntary intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense. I.C. § 35-41-2-5.

The record also shows that after Pinkston was stopped by Officer Pugh, he ran off in an attempt to flee. Because intent can be inferred by the circumstantial evidence that is available, the trial court did not err in finding that Pinkston violated his probation. The trial court's inference drawn from the inconsistencies of Pinkston's behavior was reasonable. We find no abuse of discretion in the trial court's revocation of Pinkston's probation.

The State presented sufficient evidence that Pinkston violated the terms of his probation by a preponderance of the evidence. Accordingly, we find that the trial court acted within its discretion when it revoked Pinkston's probation.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.