## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 09 2019, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rashad Lamar Thompson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 9, 2019 <br><br> Court of Appeals Case No. 18A-CR-2154 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Robert J. Pigman, Judge <br><br> Trial Court Cause Nos. 82D03-1603-F4-1458, 82D03-1804-F6-3019 |

**Altice, Judge.**

## Case Summary

In this consolidated appeal, Rashad Thompson challenges the revocation of his probation in one case and the trial court's sentencing of him in a separate case. He raises two issues on appeal that we restate as:

> I. Whether Thompson's due process rights were violated because the trial court revoked his probation for a reason not alleged in the petition to revoke; and

> II. Whether the trial court abused its discretion in sentencing Thompson.

We affirm in part and reverse in part and remand.

## Facts & Procedural History

On March 7, 2016, police conducted a traffic stop of Thompson as he was driving his vehicle. Thompson acknowledged that his license was suspended, and he was removed from the vehicle and handcuffed. During an ensuing search of his vehicle, police discovered a handgun. Thompson then fled from the scene. Upon being tackled, Thompson struggled with officers and attempted to grab an officer's handgun. One of the officers sustained bodily injury before Thompson was secured.

For this conduct, the State charged Thompson on March 11, 2016 under Cause Number 82D03-1603-F4-1458 (Cause 1458) with: Count I, Level 4 felony unlawful possession of a firearm by a serious violent felon; Count II, Level 5 felony disarming an officer; Count III, Level 5 felony escape; Count IV, Level 6

felony resisting law enforcement; and Count V, Class A misdemeanor resisting law enforcement. On June 2, 2016, Thompson entered into a plea agreement in which he pled guilty to Counts II and III in exchange for a sentence of six years. On August 24, 2016, the trial court sentenced Thompson to six years on each of the two convictions, ordering the sentences to run concurrently. The trial court ordered that two years be executed and the remaining four years be suspended to probation.

[5] On April 17, 2018, the State filed a petition for revocation of probation, alleging one violation:

> That the defendant is in violation of the order of the Court, by knowingly failing to appear to sign up for probation.

*Appellant's Appendix Vol. II* at 79. The trial court issued a warrant for Thompson's arrest.

[6] On April 26, 2018, Thompson was driving in his vehicle and pulled into a gas station. Police approached him and told him that he had outstanding warrants. Thompson provided false information to the officers, and he refused to exit the vehicle when asked to do so. Thompson attempted to drive away and eventually crashed into an officer's vehicle.

[7] For this conduct, the State charged Thompson on April 30, 2018 under Cause Number 82D03-1804-F6-3019 (Cause 3019) with: Count I, Level 6 felony attempted resisting law enforcement; Count II, Class B misdemeanor false informing; and Count III, Class B misdemeanor criminal mischief. The State

added a habitual offender enhancement on that same day. The matter was convened for jury trial on July 19, 2018. After the jurors were sworn and voir dire was conducted, Thompson moved for a mistrial, which the trial court denied. After the jury was selected, Thompson made a *Batson*[1] motion, which the trial court denied. Thompson then pled guilty to the offenses as charged and admitted to being an habitual offender.

[8] On August 10, 2018, the trial court held a combined hearing in Cause 1458 and Cause 3019. Prior to the start of testimony, the prosecutor and the trial court had the following exchange concerning the petition to revoke probation in Cause 1458:

> STATE: Uh yes sir there's as preliminary matter Judge[.] I was looking through my notes and the docket, um, there was a [petition to revoke] that was filed in [Cause]1458, and according to my notes and I didn't see it on the docket in that case I don't know that the Defendant actually ever admitted the PTR, um, and I couldn't find – or I couldn't find where he had and I just wanted to point that out to the Court preliminarily before the sentencing hearing begins.
>
> COURT: Yeah his plea of guilty [in Cause 3019] is an admission that he's violated the terms and condition of that sentence [in Cause 1458] as he was serving that sentence when this incident occurred so.

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

STATE: Yes sir.

COURT: I don't need a formal admission.

*Transcript Vol. II* at 18.

[9] Several times during his testimony, Thompson acknowledged that he had missed his probation meeting, which he stated was due to his car not working. He maintained that, except for the missed meeting, he had completed all of his probation requirements. He explained that, when he got arrested for the Cause 3019 offenses, he was driving to his attorney's office to discuss the missed probation meeting, attempt to resolve it, and turn himself in to authorities if need be. Thompson said that, on his way, he stopped for gas, and when he pulled into a gas station, police surrounded him, guns drawn, and told him that he had outstanding warrants. Thompson maintained that he was not aggressive or violent during the encounter and tried to tell the officers that he had only missed a probation meeting. His counsel argued that "but for not making it to his attorney's office[,] . . . we probably wouldn't be here right now" and "had Mr. Thompson not stopped for gas he probably would have been before this Court on a petition to revoke after turning himself in at probation." *Id.* at 42. Counsel asked for leniency in sentencing, noting that Thompson "was in complete compliance until the day this happened." *Id.*

[10] The prosecutor, in response, elaborated on the missed probation meeting, stating that Thompson was scheduled to appear for a meeting on March 21, 2018, to go over the rules of probation, but Thompson had called and spoken

with the probation department, who at Thompson's request, agreed to reset the meeting to April 2, 2018. He did not appear for that meeting. On April 17, 2018, the State filed the petition to revoke, and he was arrested April 26. The prosecutor described the encounter when Thompson was arrested, stating that police had initiated a traffic stop of Thompson for a traffic infraction, Thompson cracked his window and gave a false name, and when he was told to exit the vehicle, Thompson rolled up his window, put his car in gear and started to drive, running into a deputy's car, all actions that indicated to officers that Thompson was attempting to escape. With regard to sentencing in Cause 3019, the prosecutor urged that "in terms of aggravators," Thompson "has eight prior felonies," "a pattern of resisting law enforcement," and was on probation at the time he committed the offenses in Cause 1458. *Id*. at 43. The prosecutor also advised the court of an outstanding warrant from Davis County, Kentucky issued in February 2018 "for first degree assault involving an alleged shooting of a person." *Id*. The State asked the trial court to impose the entire previously-suspended four years in Cause 1458 and impose a seven-year sentence in Cause 3019, to be served consecutively, for an aggregate term of eleven years.

At the conclusion of the hearing, the trial court stated that in Cause 1458 "the petition to revoke [] is granted" and ordered the four-year previously-suspended sentence to be executed. *Id.* at 46. The court's written sentencing order more specifically stated: "Court now grants revocation for committing a new offense in [Cause 3019]." *Appellant's Appendix Vol. II* at 99.

[12] As to Thompson's guilty plea in Cause 3019, the trial court sentenced him to two years on his conviction for Level 6 felony resisting law enforcement (Count I), enhanced by four years for the habitual offender adjudication, and to 180 days each for Class B misdemeanor false informing and criminal mischief (Counts II and III). It ordered the sentences to run concurrent with one another but consecutive to the sentence in Cause 1458 for an aggregate sentence of ten years. When Thompson asked, "[N]othing suspended at all?", the trial court responded:

> No the record – well you have eight prior felonies, you were on probation at the time you did this, you have a pattern. I do agree that there's a number of resisting convictions in the past, you've had a robbery conviction and other serious felons – felonies so no I can't anymore. We've gone as far as we're going to go.

*Transcript Vol. II* at 48. Thompson expressed frustration that he was receiving a ten-year sentence "[a]ll for missing my probation meeting," and the exchange with the trial court continued:

> THOMPSON: I did – none of the other stuff count as mitigating factors about how I didn't get in any trouble and I did everything no failed drug tests, none of that counts or matters?

> COURT: . . . I took into account those and on those occasions when you – your behavior was – was what the law required you got credit for that, but here – this situation could have turned dangerous and violent very, very easily. Somebody could have been seriously hurt this is not acceptable.

*Id.* at 49. Thompson indicated that he wished to appeal, and the court appointed counsel to perfect an appeal.

[13] Thompson thereafter filed a separate notice of appeal under each of the two cause numbers, which this court later consolidated upon Thompson's motion.

# Discussion & Decision

## *I. Probation Revocation*

[14] Probation is a favor granted by the State, not a right to which a criminal defendant is entitled. *Cox v. State*, 850 N.E.2d 485, 488 (Ind. Ct. App. 2006). Appellate courts review the revocation of a defendant's probation for an abuse of discretion, consider only the evidence most favorable to the trial court's judgment, and do not reweigh evidence or judge the credibility of witnesses. *Woods v. State*, 892 N.E.2d 637, 639 (Ind. 2008). We will affirm the decision to revoke "[i]f there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation[.]" *Id.* at 639-40.

[15] Probation revocation is governed by Ind. Code § 35-38-2-3(a), which provides, "The court may revoke a person's probation if . . . the person has violated a condition of probation during the probationary period[.]" Upon the assertion by the State that a person has violated a condition of probation, "the court shall conduct a hearing *concerning the alleged violation*." Ind. Code § 35-38-2-3(d) (emphasis added); *Gilreath v. State*, 748 N.E.2d 919, 921 (Ind. Ct. App. 2001). While an individual at a probation revocation hearing does not possess the

same rights with which he was endowed prior to a conviction, the due process clause of the Fourteenth Amendment does provide certain protections to probationers at revocation hearings. *J.H. v. State*, 857 N.E.2d 429, 432 (Ind. Ct. App. 2006), *trans. denied.* "Those rights include written notice to the probationer of the claimed violations." *Hubbard v. State*, 683 N.E.2d 618, 622 (Ind. Ct. App. 1997); *see also Washington v. State*, 758 N.E.2d 1014, 1017 (Ind. Ct. App. 2001) (due process requires that the petition for revocation disclose the grounds upon which revocation is being sought).

[16] This court has repeatedly held that it is error to base revocation upon a violation for which the probationer did not receive notice in the petition for revocation. *See Bovie v. State*, 760 N.E.2d 1195, 1199-1200 (Ind. Ct. App. 2002) (holding it was error for trial court to base probation revocation upon possession of drug paraphernalia when that violation was not listed on the Notice of Violation of Probation); *Long v. State*, 717 N.E.2d 1238, 1240 (Ind. Ct. App. 1999) (holding probation could not be revoked based upon an act that was similar but not identical to the charged act); *Hubbard*, 683 N.E.2d at 622 (finding that because failure to take test for use of alcohol was not set out in petition for revocation, it was error for trial court to rely on that basis when revoking probation, but error was harmless because, in revoking probation, trial court identified other violations that were included in the petition).

[17] Here, Thompson contends, "The record cannot be more plain: the trial court violated [Thompson]'s right to due process under the Fourteenth Amendment when it revoked his suspended sentence for reasons not outlined in the petition

to revoke." *Appellant's Brief* at 14. We must agree. In the April 17, 2018 petition to revoke, the State alleged that Thompson had violated probation by "failing to appear to sign up for probation." *Appellant's Appendix Vol. II* at 79. On April 27, 2018, the court scheduled a hearing on the alleged violation, i.e., the missed probation meeting, and the hearing was continued and reset several times until it was ultimately held in August 2018. Meanwhile, on April 30, 2018, Thompson was charged with the new offenses, for which he pled guilty in July 2018. The petition to revoke was not amended to allege the commission of the new offenses as another violation of probation. Thompson's testimony at the August hearing, as well as his exchange with the court concerning his revocation and sentence, reflect that he believed his probation was being revoked based on the fact that he missed a meeting where he was to sign up for probation. Yet, the trial court's written sentencing order states that it revoked Thompson's probation "for committing a new offense," which was never alleged as a violation of probation. *Id.* at 99.

[18]    The State urges that any error is harmless given that Thompson acknowledged at the hearing that he missed the scheduled meeting, and, thus, the State proved the charged violation for which Thompson had received notice in the petition. We agree with Thompson, however, that, as the reviewing court, we may not determine that the evidence established that Thompson violated probation by missing a scheduled probation meeting, a finding not made by the trial court. That determination was for the trial court, and we may not assume the role of factfinder. Based on the record before us, as well as existing case law, we are

compelled to reverse the revocation of Thompson's probation and remand with instructions to reinstate Thompson's probation.[2]

## II. Sentencing

[19] Thompson next contends the trial court abused its discretion when it sentenced him in Cause 3019. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs only if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

---

[2] We note that, if the trial court had based revocation on both (1) the missed meeting and (2) commission of a new offense, then the court's reliance on the new offense would have been harmless. *See Bussberg v. State*, 827 N.E.2d 37, 44 (Ind. Ct App. 2005) (stating that it was error for trial court to make findings about violations that defendant had not received notice for purpose of the revocation hearing, but holding that error was harmless because defendant was also found to have violated probation on another basis, having ingested methamphetamine, for which he had received notice), *trans. denied*; *Hubbard*, 683 N.E.2d at 622 (finding that one of four bases identified by trial court to revoke probation was not set out in the petition for revocation and that it was error for trial court to rely on that basis, but holding that error was harmless because other bases were included in the petition). However, such is not the case here, as the trial court, in revoking Thompson's probation, relied only on the fact that he had committed a new offense.

[20] A trial court is required to provide a sentencing statement that gives a "reasonably detailed recitation of the trial court's reasons for imposing a particular sentence" and that identifies all significant aggravating and mitigating factors, if any are found, and explains why the court has found them to be such. *Id.* at 490. The purpose of this requirement "is to guard against arbitrary sentencing and to provide an adequate basis for appellate review." *Webb v. State,* 941 N.E.2d 1082, 1088 (Ind. Ct. App. 2011), *trans. denied.* In reviewing sentencing decisions, appellate courts consider both the written and oral sentencing statements. *Corbett v. State*, 764 N.E.2d 622, 631 (Ind. 2002); *Gleason v. State*, 965 N.E.2d 702, 711 (Ind. Ct. App. 2012).

[21] Thompson argues that, in sentencing him in Cause 3019, the trial court "never articulated the reasons for imposing his sentence – in either the sentencing order, or during the oral pronouncement of sentence[.]" *Appellant's Brief* at 18. We disagree. Although the written sentencing order did not specify the factors that the trial court considered, the course of the hearing and the trial court's statements at the hearing reflect that it considered various aggravating and mitigating circumstances. At the beginning of the hearing, the court indicated that it had reviewed the presentence investigation report. Following the presentation of evidence at the hearing, counsel for both parties presented argument, with the prosecutor listing Thompson's various prior convictions, including misdemeanor resisting law enforcement convictions, Class D felony resisting law enforcement conviction, Level 5 felony disarming a law enforcement officer, Level 5 felony escape, Class C felony burglary, Class C

felony possession of an altered handgun, Class C felony robbery, Level 6 felony dealing in marijuana, and Level 4 felony for dealing in a narcotic drug.

[22] Thereafter, when imposing sentence, the trial court verbally identified various circumstances that it had considered when determining Thompson's sentence. For instance, the court noted Thompson's criminal history that included eight felonies and the fact that Thompson was on probation when he committed the offenses in Cause 3019. The court also considered the nature of the offense, opining that the situation could have turned even more dangerous and violent than it was and that someone could have been seriously hurt. The trial court also told Thompson that it had taken into account – i.e., gave Thompson "credit for" – matters that Thompson urged should have been considered as mitigating, including passing drug tests. *Transcript Vol. II* at 49. We find that, based on the record before us, the trial court provided Thompson with an adequate statement of reasons for imposing the sentence that it did. Thus, the trial court did not abuse its discretion in sentencing Thompson in Cause 3019.

[23] Judgment affirmed in part and reversed in part and remanded.

Najam, J. and Pyle, J., concur.