## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 27 2019, 6:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dale W. Arnett
Winchester, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darlene Kay Herran, *Appellant-Defendant,* | June 27, 2019 |
| | Court of Appeals Case No. 18A-CR-3131 |
| v. | Appeal from the Henry Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Kit C. Dean Crane, Judge |
| | Trial Court Cause No. 33C02-1802-F5-9 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Darlene Herran (Herran), appeals the trial court's Home Detention Order and Agreement and its Order to Pay Transcription Costs following her guilty plea to operating a motor vehicle after forfeiture for life, a Level 5 felony, Ind. Code § 9-30-10-17(a)(1).

We affirm.

# ISSUES

Herran presents three issues on appeal, which we restate as:

(1) Whether the trial court improperly ordered that it may assess the cost of the preparation of the transcript to Appellate Counsel;

(2) Whether the trial court's Home Detention Order and Agreement is subject to reversal for failing to comply with statutory notice requirements set out for electronic monitoring devices; and

(3) Whether the trial court abused its discretion when it imposed a condition of Herran's home detention that effectively prohibited her from living with her husband.

# FACTS AND PROCEDURAL HISTORY

On February 22, 2018, Herran was observed driving north on 18th Street in New Castle, Indiana, by an officer of the New Castle Police Department who recognized her as a lifetime habitual traffic offender. After confirming that Herran's driver's license was subject to an indefinite suspension, the officer

performed a traffic stop and subsequently arrested Herran. On February 23, 2018, the State filed an Information, charging Herran with operating a motor vehicle after forfeiture for life, a Level 5 felony. On February 23, 2018, the trial court found Herran to be indigent and appointed a public defender to represent her.

[5] On November 29, 2018, pursuant to a plea agreement with the State, Herran pleaded guilty to Level 5 felony operating a motor vehicle after forfeiture for life. According to the terms of the plea agreement, Herran would receive a sentence of five years, with three years to be executed on home detention and two years suspended to probation. A pending charge of conversion in another criminal matter was also dismissed. The plea agreement further provided that Herran could seek a modification of her placement after completing one and one-half years of her home detention. Prior to the entry of her guilty plea, the trial court reviewed Herran's constitutional trial rights, which the trial court found she understood and waived voluntarily. Herran affirmed to the trial court that she had read the terms of her plea agreement, discussed it with her attorney, signed it, and understood that she could not request any modification of placement on home detention for 401 days. The trial court found that Herran knowingly and voluntarily pleaded guilty and that it should accept the plea agreement and be bound by its terms. The trial court accepted the plea agreement and sentenced Herran according to its terms. In its written sentencing order, the trial court granted the withdrawal of Herran's public defender.

[6] On November 29, 2018, the trial court also entered its Home Detention Order and Agreement which enumerated the conditions of Herran's home detention. The written standard conditions of Herran's home detention provided that "[n]o person convicted of a felony will be allowed to live at or visit your residence." (Appellant's App. Vol. II, p. 47). Directly above the signature line of the Home Detention Order and Agreement was the following averment:

> I have read the above terms and conditions of home detention and had those terms and conditions fully explained to me. I have received a copy of said terms. I agree to comply with all terms and conditions specified.

(Appellant's App. Vol. II, p. 49). On November 29, 2018, Herran and Herran's public defender signed the Home Detention Order and Agreement. Home detention was scheduled to commence on or before December 3, 2018. The trial court's Probation Order and Agreement, which Herran also executed on November 29, 2018, did not contain any prohibition on her living with a felon.

[7] On December 7, 2018, Herran filed an unverified *pro se* motion with the trial court seeking reconsideration of the conditions of her home detention to allow her to live with her husband, who she stated had been on parole since July 2018. On December 18, 2018, the trial court denied Herran's motion. On December 18, 2018, Appellate Counsel filed his appearance along with Herran's unverified motion seeking to allow her to live with her husband while on home detention. Herran claimed that the condition of her home detention prohibiting her from living with a felon constituted an infringement upon her

right to "society" with her husband and was an undue economic hardship. (Appellant's App. Vol. II, p. 10). On December 20, 2018, the trial court denied Herran's second motion without a hearing and without entering any findings of fact or conclusions of law.

[8] Herran filed a notice of appeal on December 31, 2018, in which Appellate Counsel was identified as "*pro bono*" counsel. (Appellant's App. Vol. II, p. 57). In her notice of appeal, Herran requested that the Henry Circuit Court 2 Reporter prepare a transcript of the November 29, 2018, sentencing hearing and furnish it to Appellate Counsel. Herran attached to her notice of appeal a copy of the chronological case summary entry dated February 27, 2018, noting that the trial court had found her indigent and had appointed her a public defender for purposes of addressing the operating while forfeited for life charge.

[9] On January 11, 2019, we granted a motion by Herran to proceed *in forma pauperis* and expressly relieved her of the obligation to pay the filing fee for her appeal. On January 24, 2019, the Clerk of the Henry Circuit Court 2 filed a notice indicating that the transcript had not yet been completed.[1] On January 25, 2019, the trial court entered its Order to Pay Transcription Costs as follows:

> [Appellate Counsel] contacted court staff to request the preparation of a transcript. Until just recently and after the transcript had already been completed, [Appellate Counsel] did not advise the [c]ourt that he expected that the transcript be

---

[1] An invoice included in the Appendix indicates that the transcript was delivered by the court reporter on January 8, 2019.

prepared at no cost to [Herran]. In fact, the [c]ourt has never received any pleading from [Appellate Counsel] requesting such a finding, nor have there been any pleadings filed asserting indigency. Due to high volume, the [c]ourt uses outside services to prepare transcripts. Accordingly, the [c]ourt FINDS and ORDERS as follows:

The Henry County Auditor shall pay . . . the sum of $94.50 as costs of transcript service to [the ] Court Reporter . . . [Appellate Counsel] however, is put on notice that the [c]ourt may assess such costs against [Appellate Counsel].

(Appellant's App. Vol. II, p. 61). On January 31, 2019, Herran filed a motion to correct error requesting that the trial court not assess the cost of the transcript preparation to Appellate Counsel. The trial court did not rule on the motion.

[10] Herran now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Costs of Transcript*

[11] Herran first contends that the trial court erroneously ordered that Appellate Counsel may be assessed the costs of the preparation of the transcript. The State counters that the issue is not ripe for appeal because the trial court's Order to Pay Transcription Costs did not, in fact, assess those costs to Appellate Counsel and merely warned that it may do so. The concept of ripeness refers to the degree that the defined issues in a case are based on actual facts, not abstract possibilities, and are capable of being decided on an adequately developed record. *Buck v. Grube*, 833 N.E.2d 110, 118 n.7 (Ind. Ct. App. 2005). In ruling

on ripeness, we consider the fitness of the issue for judicial decision as well as the hardship to the parties of withholding a decision on the merits. *Id*.

[12] We agree with the State that this issue is not ripe for appeal. The transcript was paid for with public funds, and this appeal has proceeded in due course. The trial court did not yet order Appellate Counsel to pay the costs of the preparation of the transcript. Neither Herran nor Appellate Counsel have sustained any injury, and, therefore, we decline to address the issue.[2]

## II. *Notice Requirement for Electronic Surveillance*

[13] Herran next briefly argues that the trial court failed to adequately notify her of the use of an electronic monitoring device as part of her home detention. She therefore asks us to determine "that any conditions of electronic monitoring in this matter be declared null and void." (Appellant's Br. p. 9). The terms of Herran's home detention order and agreement provided that she "shall ensure compliance with this [c]ourt's order on home detention by wearing an

---

[2] We note that a party who was permitted to proceed in the trial court *in forma pauperis* may proceed in like manner on appeal without prior authorization from the trial court or the appellate court. Ind. Appellate Rule 40(A)(1). If a party is granted *in forma pauperis* status by this court, the effect is that the party "is relieved of the obligation to prepay filing fees *or costs* in either the trial court or the Court on Appeal or to give security therefor[.]" App. R. 40(D)(1) (emphasis added). Costs are defined, in relevant part, in the Appellate Rules as "the cost of preparing the Record on Appeal, including the Transcript[.]" App. R. 67(B)(2). Thus, a defendant who has been determined to be indigent is entitled to a transcript on appeal at public expense. *See* I.C. § 33-40-8-5; *see also Hollowell v. State*, 19 N.E.3d 263, 266-67 (Ind. 2014) (noting that, after the Court of Appeals had granted him *in forma pauperis* status, Hollowell was entitled to a transcript of his post-conviction relief hearing at public expense); *Wright v. State*, 772 N.E.2d 449, 461 (Ind. Ct. App. 2002) ("[C]riminal defendants in Indiana who cannot afford to pay for a transcript are still entitled to one if they are found to be indigent.").

electronic non-removable anklet twenty-four (24) hours a day during the period of detention[.]" (Appellant's App. Vol. II, p. 47).

[14]     Herran directs us to Indiana Code section 35-38-2.5-11, which provides that

> [b]efore entering an order for home detention that requires the use of a monitoring device described in section 3.3 of this chapter the court shall inform the offender and other persons residing in the home of the nature and extent of electronic surveillance provided by the monitoring device in the home.

Assuming, without deciding, that she preserved this claim, section 35-38-2.5-11 applies to Herran's electronic monitoring device, and the trial court failed to provide adequate notice, we conclude that, on the record before us, Herran is unable to demonstrate that she has suffered any prejudice. We will not reverse any order or action by a trial court unless it impacts the defendant's substantial rights. *See* App. Rule 66(A). Herran alleges a lack of notice, and her claim of prejudice is that "electronic monitoring should be disallowed because more expansive terms of that condition may be applied than were noticed to the probationer." Our review of the conditions of the home detention order and agreement leads us to conclude that Herran was put on notice that her presence and absence from her home would be monitored by the anklet. Without any evidence that some other form of monitoring was imposed in this case, we cannot conclude that Herran's substantial rights have been impacted by any error on the part of the trial court. *See id.*

### III. *Prohibition on Living or Visiting with Felons in Home*

[15]    Herran's final contention on appeal is that the condition of her home detention prohibiting her from cohabitating or visiting with felons in her home infringes upon her constitutionally-protected, fundamental right to marriage. Herran essentially argues that the condition is unconstitutional as it applies to her because its effect is to prevent her from living with her spouse, who she represents is a convicted felon. Thus, Herran requests that we invalidate this condition of her home detention.

[16]    The State counters with a number of arguments as to why we should not address the merits of Herran's arguments, including that Herran has waived her argument by failing to raise these issues below. Our review of the record indicates that the Home Detention Order and Agreement was executed after the conclusion of the sentencing hearing, and, therefore, Herran had no opportunity to object at the trial level apart from raising the issue in her subsequent motions. Although her argument was not as well developed below as on appeal, we find it was sufficiently raised in her motions to preserve it for our review. In addition, contrary to the State's assertion that Herran invited any error when she entered into her plea agreement and signed the Home Detention Order and Agreement, we note that even when a defendant enters into an agreement enumerating conditions as part of her conditional freedom,

we will review the propriety of those agreed-upon conditions. *See*, *e.g.*, *Green v. State*, 719 N.E.2d 426, 430 (Ind. Ct. App. 1999) (finding the condition of work release agreement that Green had signed obligating him to waive his 4th Amendment rights as to any law enforcement officer to be overly broad).

[17] The State also argues that we should not address Herran's claim because she waived her right to seek any modification of her placement when she entered into the fixed-term plea agreement and the Home Detention Order and Agreement. The General Assembly has recently amended the sentence modification statute, Indiana Code section 35-38-1-17 (2018). As of the writing of this opinion, the effect of these amendments on the ability of a defendant to seek modification of a sentence imposed pursuant to a fixed-term plea agreement is being reviewed by our supreme court. *See State v. Stafford*, 117 N.E.3d 621 (Ind. Ct. App. 2018), *trans. granted*; *Rodriguez v. State*, 116 N.E.3d 515 (Ind. Ct. App. 2018), *trans. granted*. However, we need not resolve the issue because we conclude that, even if Herran had the ability to seek modification of her sentence, she is not entitled to relief on the merits of her claim.

[18] It is well-established that, once a trial court accepts a plea agreement, it is bound by its terms. I.C. § 35-35-3-3(e); *State v. Smith*, 71 N.E.3d 368, 370 (Ind. 2017). Our supreme court has held that if a plea agreement is silent as to the conditions of probation and does not reserve to the trial court the discretion to impose probation conditions, the trial court may impose only those conditions that do not "materially add to the punitive obligation" provided for by the plea

agreement. *Freije v. State*, 709 N.E.2d 323, 324-25 (Ind. 1999). For example, even if not specifically provided for in the plea agreement, a trial court may impose certain administrative or ministerial conditions, such as reporting requirements, providing notification of changes in employment or address, and remaining within the jurisdiction of the court. *Id.* at 325. These are the sort of conditions that are regularly imposed upon a defendant subject to probation, and a defendant who enters into a plea agreement that calls for a sentence to be served on probation should reasonably expect that the county's standard conditions may apply. *Id.* However, if a condition materially adds to the punitive obligation of a sentence, it may not be imposed in absence of a provision in the plea agreement providing the trial court with discretion to set the conditions of probation. *Id.*

[19] *Freije* involved conditions of probation, as opposed to the conditions of home detention at issue here. However, we have analogized home detention to probation. Although different statutory schemes are involved in these two forms of alternative commitment, we see no reason why *Freije* would not apply equally to home detention conditions. *See, e.g., Rodriguez v. State*, 714 N.E.2d 667, 670 (holding that the same standard of review applies to home detention conditions and conditions of probation).

[20] Here, Herran's plea agreement did not specifically provide for the conditions of home detention, and it did not reserve to the trial court the discretion to impose those conditions. Thus, the discretion of the trial court to impose conditions of home detention was limited to those which did not materially add to the

punitive obligations of the sentence. *See Freije*, 709 N.E.2d at 325. The condition at issue here was entered as part of the standard conditions of the home detention order and agreement, which is the type of ministerial or administrative condition which could be imposed without being expressly provided for in the plea agreement. *Id.*

[21] Herran argues that the challenged condition unduly infringes upon her fundamental right to be married. It has been recognized that citizens have a fundamental right to enter into and maintain a marriage relationship. *See*, *e.g.*, *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113 (1942) ("Marriage and procreation are fundamental to the very existence and survival of the race."). However, the condition of Herran's home detention prohibiting her from living with a felon or having a felon visit her home did not implicate Herran's ability to remain legally married to her spouse, nor did it materially add to the punitive obligations of her sentence. It does not require her to divorce her husband, legally separate from him, or to alter her legal status as to her spouse in any way. This was not a 'no-contact' order prohibiting Herran from having any contact with her spouse. Because this standard condition of home detention did not materially add to the punitive obligation of Herran's sentence, we conclude that the trial court did not abuse its discretion when it entered its Home Detention Order and Agreement. *See Freije*, 709 N.E.2d at 325.

# CONCLUSION

Based on the foregoing, we conclude that the issue of whether the trial court could assess the cost of the transcript to *pro bono* Appellate Counsel is not ripe for our consideration and that Herran has not demonstrated that she was prejudiced by any failure on the part of the trial court to provide additional notice to her regarding the electronic monitoring of her home detention. We also conclude that the standard condition of the Home Detention Order and Agreement having the effect of precluding Herran from living with her spouse was not an abuse of the trial court's discretion.

Affirmed.

Bailey, J. and Pyle, J. concur